STATE OF IOWA, Appellee, v. JOHN CLARK, Appellant.

CRIMINAL LAW: Trial—Instructions—Unduly Narrowing Issues.
1 Specifically and correctly stating, at the beginning of instructions, the ultimate elements which must be established before an accused may be convicted, furnishes no basis for the claim that the issues were unduly narrowed, or that the jury were "coerced and urged" to convict without consideration of other matters militating in defendant's favor.

CRIMINAL LAW: Trial—Instructions—Order of Stating Proposi-
2 tions—Construction as a Whole. The particular order in which propositions are stated or grouped in instructions is not of controlling importance. The all-important consideration is the accuracy and fullness of the charge when construed as a whole. And a jury need not be specifically told to construe instructions as a whole.

CRIMINAL LAW: Trial—Instructions—Assumption of Fact. An
3 inferential assumption of fact in one instruction will not constitute error when, in other instructions, the jury is repeatedly told that it is for it to determine whether such fact actually exists.

CRIMINAL LAW: Trial—Instructions—Expressions by Court of
4 Weight of Testimony. Instruction reviewed, and held not to contain any expression or opinion by the court of the weight or credibility of the testimony.

CRIMINAL LAW: Trial—Instructions—Assailing Credibility of De-
5 fendant. An instruction that the testimony of a witness should not be taken as true if the jury believe "he" was mistaken, affords no basis for the objection that the court committed a special assault on the credibility of the defendant—a male person.

CRIMINAL LAW: Trial—Instructions—Withdrawing Fact Issue.
6 Instruction reviewed, and held not to withdraw a fact issue from the jury.

WITNESSES: Impeachment—Contradictory Statements. State-
7 ments by a witness which, when construed in the light of the language thereof and the record pertaining thereto, would not justify the jury in finding that the witness had even *impliedly* denied the truthfulness of her story as a witness, are necessarily inadmissible as impeaching evidence.

PRINCIPLE APPLIED: Prosecutrix, a child under the age of consent, but past the age of puberty, and defendant were both in jail at the same time, the latter charged with carnally knowing the prosecutrix. Prosecutrix had divulged to the authorities the meretricious relations existing between her and defendant. During the confinement in jail, she wrote the following note to defendant:

"Hello John: Did Mr. Mason go your bonds. I hope he did so you can get out. The reason why I told people what I did was because I thought they would then let us get married, if I must go to the school at Mitchelville I wont be gone long and we can get married. I still love you and hope it will come out all right."

On the final trial, prosecutrix was a witness against defendant. The testimony as to defendant's guilt was very persuasive. While denying guilt, he admitted he had slept with the child since she was four years old. The above note was offered as an item of impeachment of prosecutrix.

Held, the note, in view of the language thereof and of the record in the case, did not constitute even an implied denial by prosecutrix of the truthfulness of her story as a witness, and therefore was inadmissible.

SALINGER, J., dissents, holding, inter alia, that the construction of the note was for the jury and not for the court.

*Appeal from Black Hawk District Court.*—CHAS. W. MULLAN, Judge.

FRIDAY, JUNE 22, 1917.

DEFENDANT was convicted of the rape of a female under the age of 15 years, and appeals.—*Affirmed.*

*H. M. Havner*, Attorney General, *H. H. Carter*, Assistant Attorney General, and *Edward J. Wenner*, for appellee.

*W. W. Woolley, H. E. Tullar* and *J. C. Murtagh*, for appellant.

SALINGER, J.—I. On complaint against instructions given, references are made to the abstract. These are so narrow that, if we confined ourselves to what they point out, we would begin and end in the middle of lines, and

deal with detached pieces of the instructions, which, detached, are without meaning. We have been compelled to use our own judgment in adding context in order to deal with what is complained of.

Next to stating what the indictment charges, the plea, and that defendant claims he did none of the things charged, the jury is told that, before defendant may be found guilty, the State must establish beyond reasonable doubt: first, that defendant had intercourse with Iva Utley; second, that she was a female child then under the age of 15 years; that, if these two things have been so proven, the guilt of defendant is established, and the jury should so find by its verdict; that, if this has not been done as to either of these two things, defendant should be acquitted. It is presented that these two propositions were "specially indented and spaced at the head of the instructions to attract attention," and that this much of the charge unduly narrowed the issues and led the jury to think nothing else in the case was worthy of attention.

1. CRIMINAL LAW: trial: instructions: unduly narrowing issues.

The crime charged consists of intercourse with a female child under 15 years of age. It cannot be an improper narrowing to make conviction depend upon proving the elements which constitute the crime charged. What was done merely sifted the material from the immaterial, and that is the purpose of instructing a jury. Nor can it be error that a correct instruction was emphasized. As for the rest, we cannot dictate the style of composition in a correct instruction, or the juxtaposition of proper elements therein.

2. CRIMINAL LAW: trial: instructions: order of stating propositions: construction as a whole.

This all seems so clear that we feel that it is not seriously disputed. This is no strained theory, because there are other complaints of the same statement in the instruction, of which it might be said that they present a

complaint for which it is possible to claim more reason.
That complaint, as we understand it, is that the charge
unduly narrowed the issues, because it speaks in terms of
exclusion, and thereby makes it possible to convict the de-
fendant, although the testimony of the prosecutrix be not
corroborated. This confuses a statement of what must be
proven beyond reasonable doubt with a guide stating what
constitutes such proof. In this instruction, the court did
not undertake to tell the jury what would establish the
two elements which would justify conviction, beyond say-
ing that they should be proven beyond reasonable doubt.
It left it to another part of the charge to state what would
make proof beyond reasonable doubt of these elements. It
there directed that proof of penetration was essential, and
that the testimony of prosecutrix must be corroborated.
True, only the element of penetration was put close to the
statement of the two elements essential to conviction, and
that the part dealing with corroboration is some 66 lines
removed from that first statement. But, as said before,
that is mere matter of method, style and diction.

### 1-b

In like case is the complaint that the jury was not
told that the instructions were to be considered as a whole,
and might not consider any detached line or lines separate-
ly and independently. It is proper to give such an in-
struction, of course. We know of no requirement that
the trial judge must have in the instructions an index to
the instructions, advising the jury where different points
in the charge may be found therein, and that none so
specified is to be considered, detachedly. So long as all that
is required is found in the charge as a whole, and there is
nothing conflicting or misleading, mere method of pre-
sentation will rarely, if ever, constitute reversible error.

1-c

Next, it is said that to follow up the statement that the guilt of defendant is established if said two elements were proven, with the statement that, if these were proven, the jury should so find by its verdict, in effect, "coerced and urged to convict." We think otherwise. A correct statement that, if certain elements were proven, guilt is established, makes it follow that the jury should find defendant guilty by their verdict. It is not coercion, but the statement of an inevitable deduction. How strained all this is becomes apparent when it is remembered that the jury was told that, if either of these elements were not proven, there should be a verdict of acquittal. Upon the reasoning of appellant, this is a coercion to acquit.

We have given no consideration to that part of the brief for appellant which presents our various decisions condemning instructions held erroneous for conflict, undue emphasis, or other reasons. The law these announce is undeniable, but is inapplicable. The instruction under consideration violated nothing condemned in these cases, and said instruction presents no reversible error.

II. Complaint is made of Lines 26 to 33, inclusive, page 26 of the abstract. These lines are:

3. CRIMINAL LAW: trial: instructions: assumption of fact.

"In determining whether the defendant is guilty of the crime of rape, by reason of having carnally known and abused the said Iva Utley, and in having sexual intercourse with her, you are instructed that the State must establish, beyond a reasonable doubt, that the defendant, in having sexual intercourse with her, did penetrate the body of the said Iva Utley, in the act of sexual intercourse."

It is argued that there should have been added, "if he did so have intercourse with her;" that without this, the

court assumed for the jury "that the defendant did carnally know and abuse the prosecutrix and did have sexual intercourse with her." It is added that this matter was obviously for the jury to determine; that it must have been influenced "by the manner" adopted by the court "of referring in this instruction to the issue of carnal knowledge and intercourse;" and that it was needless for the court to refer to the matter in this way, and so doing was prejudicial. The jury was told time and again that the fact of whether there was intercourse was for them. That being so, we have fully set out the matter complained of and the complaint made of it, because merely doing this will demonstrate that the complaint is not well made.

III. One part of the charge tells the jury that, though it may find from the evidence that no force was used by the defendant except such as might have been included in the act itself, "such act does not relieve the defendant of the charge of rape and is no defense to such charge as made in the indictment." The complaint is that the jury might find from the evidence that no force was used by the defendant, and may have thought that "the court was merely expressing a view as to what the evidence indicated on the issue of force and sexual intercourse, and, if so, this was an invasion of the province of the jury;" that it was improper to use language from which the jury might fairly understand the court was passing on the weight of conflicting evidence.

4. CRIMINAL LAW: trial: instructions: expressions by court of weight of testimony.

It is true that this should not be done as to conflicting evidence. We think it was not done, and that there is no merit in any part of this objection.

IV. It is urged that the credibility of the defendant as a witness was unduly assailed in the instructions. Most of the references made to the abstract in support of this point out cautions against the testi-

5. CRIMINAL LAW: trial: instructions: assailing credibility of defendant.

mony for the State, and are requirements that the testimony of the prosecutrix be corroborated. True, in the general instruction that the jury is the sole judge of the weight of the evidence and the credibility of the witnesses, it is told to consider the interest of the witnesses in the result. This, standing alone, is proper, of course. But the claim that this dealt unfairly with the testimony of the defendant as a witness is not so much grounded on this part of the instruction, but upon another part of the same general instruction, which is:

"You are not bound to take the testimony of any witness as absolutely true, and you should not do so if you are satisfied from all the facts and circumstances in evidence that such witness is mistaken in any of the facts testified to by him."

The argument is that using the word "him," because it does not touch the testimony of the female prosecutrix, singles out defendant as witness on his own behalf. This objection is utterly strained and hypercritical. The jury could not in reason so have understood it, and the statute provides:

"Words importing the masculine gender only may be extended to females." Par. 3, Section 48, Code, 1897.

It was said in one instruction:

6. CRIMINAL LAW: trial: instructions: withdrawing fact issue. "Evidence as to the defendant having had intercourse with the prosecuting witness more than 18 months before the time charged in the indictment has been admitted upon trial of this case."

One objection to this is the following:

"Our argument that this was prejudicial is superfluous, in view of the same error having been committed in other parts of the charge, and having been already argued."

The argument is not very clear to us. The additional complaint is that, since defendant denied he ever had inter-

course with prosecutrix, and there was evidence of intercourse both within and before that 18 months, the court failed to leave the issue of intercourse before the 18 months to the jury, because it did not say, instead of, "evidence has been admitted of intercourse more than 18 months before the time charged in the indictment," "evidence had been admitted *tending* to prove such intercourse." It must suffice that we say the objection is not well taken.

If there be other objections to the instructions, what has been said covers them, or their type.

V. For the purpose of this review, it

7. WITNESSES: impeachment: contradictory statements.

is established that, while both prosecutrix and defendant were in jail, the girl wrote defendant the following note:

"Hello John: Did Mr. Mason go your bonds. I hope he did so you can get out. The reason why I told people what I did was because I thought they would then let us get married, if I must go to the school at Mitchelville I wont be gone long and we can get married. I still love you and hope it will come out all right."

The defendant made due offer of this paper in evidence, and it was excluded on the objection that its contents were irrelevant and immaterial, and not an issue in the case. The majority is of opinion that this exclusion does not justify a reversal. Its views are thus stated by Ladd, J.:

"I am not persuaded that an inference may be drawn from the note sent to defendant by prosecutrix, while both were in jail, that the accusation was not made because true, but solely to bring about a marriage. The only language which could possibly warrant such an inference is the following: 'The reason why I told people what I did was because I thought they would then let us get married.' In the first place, this does not carry the implica-

tion that what she 'told people' was untrue. What she had told would not naturally have been divulged but for some compelling circumstance, and this she plainly states, i. e., to clear the way for their marriage. The plain implication is that, but for this, she would not have told their secret. Every word written was entirely consistent with the truthfulness of her story, and the jury might not, had the note been before them, properly have inferred an implied denial of the truth of her accusation. Other portions of the note tend to confirm her story, for it is scarcely possible that this child of his deceased wife, scarcely 15 years of age, would have written him of her love and desire to marry but for meretricious relations previously existing between them. Her mother had departed this life in November, 1914, and she attained 15 years of age on April 20, 1915. Though the defendant denied having sustained improper relations with her, he testified that 'sometimes Iva slept on springs and sometimes she slept with me. Mr. Wright, when building the fires, could see the front room where Iva and I slept, and where the view was not obstructed. There was perhaps a dozen times when Wright was there that Iva became frightened and insisted on lying on my bed. Iva said at these times that she was afraid to sleep alone.' He then swore that it had been her custom to sleep with him since 4 or 4½ years old. Wright testified that he had boarded there 5 or 6 weeks, during which defendant and this girl occupied the same bed; and, coupling all this with what appears in this note and in her story, it becomes very clear that there is no implication that she intended in the note to deny having told the truth. Both say they had repeatedly occupied the same bed, and the circumstance that she, as a child, had slept in his bed, scarcely justified their occupancy of the same bed after the only legitimate tie between them had been severed by his wife's death, and she was past the age of puberty. In

view of this record, it seems utterly impossible that the jury could have construed the note into a denial of what prosecutrix had testified to. To do so exacts the exercise of extraordinary imaginative powers of such high order as not to be imputed to persons pursuing the ordinary walks of life, and, this being so, the note could not have been accorded potential consideration as an item of impeaching evidence. In my opinion, the ruling excluding the testimony of its contents was without prejudice, and the judgment should be affirmed."

Speaking for himself, the writer is constrained to say:

Upon analysis, this is an assertion that, first, no error was committed, and, second, that, if there was, the record shows it was without prejudice. The argument for these positions is:

(a) The statement, "the reason why I told people what I did was because I thought they would then let us get married," does not carry an implication that what she "told people" was untrue, and every word written is entirely consistent with the accusation made by her being a truthful one.

(b) No inference may be drawn from this that the accusation that prosecutrix had made is false.

(c) It cannot be inferred that what was written was not written solely to bring about a marriage.

(d) The true construction is that she would not have told what was true except for a compelling desire to clear the way for marriage.

(e) And that, therefore, if the note had gone to the jury, it could not possibly have inferred therefrom that any denial of the truth of the accusation had been made.

The finding that there was no prejudice divides as follows: (1) It is undisputed that the two occupied the same bed often. (2) Though this had continued ever since the girl was 4½ or 5 years old, this does not justify the con-

tinuance of this practice after the mother had died, in November, 1914, at which time the girl lacked some 4 months of being 15 years old, and when she had passed the age of puberty.   (3) The truth of the accusation has corroboration, because it is scarcely possible that this child of the deceased wife, scarcely 15 years old, would have written of her affection and desire to marry if there had not been previously existing meretricious relations.   (4) The entire note is so worded that, when backed up by the testimony tending to show that the accusation was a truthful one, it becomes very clear that there was no intention to deny that she had told the truth.   (5) For which reasons, the jury could not have accorded the note potential consideration as an item of impeaching evidence, and to have inferred from the note a confession that the accusation was false, exacts the exercise of extraordinary imaginative powers of such high order as not to be imputable to persons pursuing the ordinary walks of life.

With all due respect, the writer of this dissent thinks that, passing all else, the majority has confused error with rendering error non-prejudicial, overlooked the difference between a jury question and what is established as matter of law, and has so intermingled what is sound, standing alone, as that the deduction from the combination is untenable.  Assume, with the majority, that the evidence of intercourse was exceedingly strong.  That may work that error in excluding the note was not prejudicial. But it does not sustain the argument that, therefore, the note did not contain an admission that the writer had falsely accused defendant of having had intercourse.  That is self-evident.  For, if the note had the words, "I swore falsely in saying you had connection with me," the statement would be in the note, and the jury would have to find that it was, even if defendant admitted the intercourse. So of a related argument.  Even if it be true that people

rarely say they have testified falsely when they have tes-
tified truly, that would hardly be material if the admis-
sion *is* made. And on the other hand, if there be no such
admission, that such an one is rarely made is quite imma-
terial and irrelevant.

He agrees that, if the note as matter of law contains
no admission of a false accusation, it had no direct mat-
ter of potential impeachment, but is not able to agree that,
if the jury could find that the writing had such admission,
it was right to exclude the writing because the evidence
of guilt was strong. The fact that the jury believed the
prosecutrix gave the evidence its greatest item of
strength. Without believing her, it is highly probable that
there would have been no conviction. It was surely never
before held that, because testimony is strong, it was not
permissible to show that a witness who contributed greatly
to its strength had stated out of court what vitally dis-
credited his testimony. In the last analysis, the majority
holds, on this head, that because, when a thing *is not* said
in a letter, the letter has no impeaching effect, therefore
it was not said.

If the note had stated, "The reason why I swore false-
ly to what I did was to bring about our marriage," the
majority would be with the writer. If it stated, "I truth-
fully swore you had intercourse with me because I be-
lieved that would promote our marriage," he would still
think the note should not have been excluded. For the
jury could find that the desire for marriage was a motive
for making the accusation, falsely. But in the supposed
case, he would agree that the note contained no *direct* ad-
mission that the accusation was false. Unfortunately for
ease in settling the question before us, prosecutrix made
neither of these plain statements. What she did say was:
"The reason why I told people what I did was because I
thought they would then let us get married." He agrees

that this is not saying, in so many words, "The only justification I had for accusing you is that I wanted to promote our marriage." But what is enumerated excludes what is not. And, while the jury could find that here was no admission of false accusing, and that all that is admitted is that the truth was told to help bring about the marriage, it could, he thinks, find also that, when one writes he told something for the reason that he hoped thereby to bring about a marriage, he admits there is no other reason for having told it, which excludes the reason that he told it because it was the truth. He agrees that the jury could find that no false accusation is admitted, but does not believe that either the trial or this court has the right to say that no juror could reasonably say that such an accusation was admitted. That is just what the majority effectuates. It is no answer to say that any juror who did so would have to have extraordinary imaginative powers of such high order as may not be imputed to persons pursuing the ordinary walks of life. We may assume that the panel would not have twelve men thus endowed, or burdened, as you please. But it might have *one* who had more power to infer than is possessed by judges of this court. That he has is no reason why he should be not allowed to vote against conviction; no reason why he should not be allowed to consider some item of evidence in fear that he was able to see something in it that these judges would not be able to see. It is no ground for challenging a juror that he has more than average faculty for inference, analysis and deduction, or even that he has a powerful imagination. The facts are to be found by juries, and by use of such powers as they have, even if these differ from those we have. We may not say that a jury may not find a fact which, with our own endowment, we would not have found. The writer thinks, too, that another argument of the majority is two-edged. True, the

jury could have found from the letter that there had been illicit relations, because the girl would not write as she did if there had not been. At the outset, if the letter had both good and ill for defendant, that was no justification for excluding it over his objection. He had the right to take the chance whether one view of it would help him more than another would hurt. But, aside from that, even as the tone of the note might tend to prove intercourse, it might lead a jury to think that no such affection as the note evinces would exist if defendant had wronged its writer.

The essence of the error of the majority is that it holds that the letter can bear but one construction, as matter of law. The writer thinks that reasonable men could so construe it, and that equally reasonable men could find the construction which defendant urges. Even for this ultimate view, I find that I am not wholly without support. In *Sparf v. United States*, 15 Sup. Ct. Rep. 273, at 324, the majority upheld a trial court in instructing a jury that they must convict of murder or nothing. Justices Gray and Shiras dissented from such conclusion, and in so doing, said:

"He (the trial court) thus substituted his own decision upon this question of fact for the decision of the jury, to which the defendants were entitled under the Constitution and laws of the United States. If all the justices of this court should concur in the opinion of the judge below upon this question of fact, still the defendants have not had the question decided by the only tribunal competent to do so under the Constitution and laws."

The writer agrees that a case for the State might be so strong as that excluding some evidence would be proven to be error without prejudice, but does not agree that here is such a case. The defendant denies guilt. The testimony of the prosecutrix is weakened by this letter, which

we must consider on the question of whether the strength of the evidence cures excluding the letter. While it is true that the parties occupied the same bed, it is also true that this was done with absolute lack of concealment, and that there is no dispute of his statement that she came to his bed because she was frightened, which sustains defendant in his claim that no wrong was thought of, or done. The writer has no desire to deny that the practice was highly repugnant to the usual standards of refined living. But there are many who are coarse and have no conception of these standards. That disregard invites missionary work, but must still be an argument for innocence when practiced by those who have no appreciation of these standards.

In the opinion of the writer, the cause should be remanded for a new trial on account of the exclusion of the letter, but, as the majority think otherwise, the judgment below will stand—*Affirmed.*

All concur as to Divisions I, II, III and IV of the opinion. As to affirmance, Ladd, Weaver, Evans, Preston and Stevens, JJ., concur.