STATE OF IOWA, Appellee, v. LAWRENCE O. FLORY, Appellant.

HOMICIDE: Evidence—Ill Health of Deceased. On a prosecution for murder by poison, the exclusion of evidence tending to show the diseased condition of the deceased five and more years prior to the alleged homicide is not erroneous, no offer being made to show that such diseased condition continued down to the time of the death of said deceased.

HOMICIDE: Evidence—Immaterial Inquiry. Uncontradicted testimony as to the amount of poison contained in the *particular* embalming fluid injected into a body renders immaterial any inquiry into the amount of poison contained in other such fluids of the same manufacture.

HOMICIDE: Evidence—Motive—Reconciliation—Inapplicable Instruction. In a prosecution for uxoricide, a requested instruction as to the effect of a reconciliation, as bearing on motive, is properly refused when there is no direct evidence of reconciliation, and when the difficulties between the parties appear to have continued down to the time of the death of the wife.

CRIMINAL LAW: Reasonable Doubt—Circumstance Tending to Show Guilt. On a prosecution for murder by poison, the jury need not be told that they must, before they can convict, find beyond a *reasonable doubt* that the accused bought the poison at the time and place claimed by the State, the record revealing other testimony tending to show the administration of the poison by the accused. (See Book of Anno., Vol. I, Sec. 13917, Anno. 40 *et seq.*)

CRIMINAL LAW: Trial—Province of Jury—Fallibility of Testimony. A jury need not be told that testimony as to the identity of a party who did a named thing is "exceedingly fallible."

HOMICIDE: Murder by Poison—Constitutional Right to Declare Effect. The legislature may constitutionally declare that murder by poison shall constitute murder in the first degree.

HOMICIDE: Included Offenses—Murder by Poison. Principle reaffirmed that in a prosecution for murder by poison neither second-degree murder nor manslaughter need be submitted.

HOMICIDE: Included Offenses—Absolutely Discredited Testimony. In a prosecution for murder by means of poison, the court is not required to submit assault with intent to kill or to inflict great bodily injury because of the presence in the record of evidence that the same poison was contained in the embalming fluid injected into the body of the deceased, and of evidence in the form of an official death certificate which

gives the cause of death as disease, when the probative force of such evidence on the issue in question is wholly destroyed by unquestioned testimony that the poison found in the body, *in addition to the quantity traceable to the embalming fluid,* was over seven times sufficient to cause death, and by equally unquestioned testimony that the official certificate was incorrect in assigning disease as the cause of death.

Headnote 1:  30 C. J. p. 218 (Anno.)  Headnote 2:  30 C. J. p. 219 (Anno.)  Headnote 3:  30 C. J. p. 337.  Headnotes 4, 5:  16 C. J. p. 943. Headnote 6:  12 C. J. p. 1202; 29 C. J. p. 1106.  Headnote 7:  30 C. J. p. 403.  Headnote 8:  30 C. J. p. 398.

*Appeal from Poweshiek District Court.*—CHARLES A. DEWEY, Judge.

NOVEMBER 23, 1926.

REHEARING DENIED APRIL 7, 1927.

The defendant was indicted for murder in the first degree, the accusation being that he killed his wife by the adminstration of poison. There was a verdict of guilty, and from a judgment thereon of imprisonment for life he appeals.—*Affirmed.*

*Stockman & Baker, J. A. Devitt, F. M. Beatty,* and *Frank Bechly,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

VERMILION, J.—The case has been before this court on a prior appeal. *State v. Flory,* 198 Iowa 75. Upon the second trial, substantially the same essential facts were shown, and the defendant was again convicted. It is unnecessary to repeat at length the statement of facts found in the former opinion.

The certificate of death made by the attending physician, the exclusion of which was a ground of reversal on the former appeal, was admitted in evidence on the second trial. The certificate gave the cause of death as "acute myocarditis, contributory (secondary) aortic insufficiency."

I. The death of the deceased occurred on March 9, 1922. The appellant complains that he was not permitted to show that, in 1914, the deceased was suffering from uremic poisoning, due

1. HOMICIDE:
evidence: ill
health of
deceased.

to the condition of her kidneys, and had convulsions which affected her heart; that, in 1915 also, she had uremic poisoning, due to the diseased condition of her kidneys; that, in 1917, several tests of the urine indicated a diseased conditions of the kidneys. The same testimony was offered on the former trial, and its exclusion was urged as a ground of reversal on appeal. It was not particularly referred to in the former opinion, but had the careful consideration of the court, and was not deemed cause for reversal. But it is now urged that, in connection with the death certificate, the testimony became material and competent. There was no offer to prove that the conditions sought to be shown in 1914 to 1917 continued down to or existed at the time of death, or that they had any connection of cause and effect with the cause of death shown in the death certificate. We think that no prejudicial error appears here. *Redfield v. Redfield,* 75 Iowa 435.

II. It was the claim of the State that the deceased died from bichloride of mercury poisoning. A considerable quantity of that poison was found in the body, on a post-mortem examination. Bichloride of mercury was contained in the embalming fluid injected into the body, but there was testimony that the total amount in the embalming fluid was less than half that found in the body. The defendant was denied the right to show, on cross-examination of the witness who made the chemical analysis of the embalming fluid, certain conditions claimed to have been found by him on a visit to the place where the fluid was compounded and put up, indicating that the amount of bichloride of mercury in the fluid there made was not constant. The witness had testified on this point, on direct examination, to an examination of a part of a bottle of the fluid which the undertaker testified was what was left in the bottle from which that injected into the body of deceased had been taken. There was no contradiction of the testimony of the undertaker. Clearly, the matter inquired about was not cross-examination, and it was also immaterial. The ultimate material fact in this connection was the amount of bichloride of mercury in the fluid injected into the body. When this was shown by the analysis of the remainder of the contents of the bottle from which it was taken, the amount that might be

2. HOMICIDE: evidence: immaterial inquiry.

put in other fluid of the same name or manufacture was wholly immaterial.

III. Other complaints are made of the exclusion of testimony offered by the defendant. The same rulings were made on the former trial and approved on the appeal. They require no further consideration.

IV. Complaint is made of the refusal of the court to give a requested instruction to the effect that, if defendant and his wife had some differences, and thereafter they were settled and adjusted, and the parties lived together as husband and wife, under the usual and ordinary circumstances, the former differences could not be taken into consideration as tending to prove a motive for the crime. There was evidence that at one time the appellant left the deceased, taking a part of the household goods, and that this was against her wishes; that he had sought advice about securing a divorce, and had been told that he had no sufficient grounds; that, a few weeks before the death of his wife, the defendant frequently had sexual intercourse with a young woman who was employed in the home; and that appellant and the deceased quarreled about his conduct with this girl. There was no direct evidence of a reconciliation of past differences. The most that appears is that at times their relations appeared to be pleasant; that they were living together prior to, and at the time of, the wife's death; and that they had quarreled shortly before. The facts do not bring the case within the rule announced in *State v. Hossack*, 116 Iowa 194.

3. HOMICIDE: evidence: motive: reconciliation: inapplicable instruction.

Moreover, the holding in that case was that, where there was a good-faith reconciliation of past differences between husband and wife, one of whom was accused of killing the other, lived up to by the parties down to the time of the death of the deceased, in which former animosities were forgiven and forgotten, the previous troubles could not be considered as affording a motive for the crime. The requested instruction, however, attached the same effect to a settlement and adjustment of prior differences— which is by no means necessarily the same thing as reconciliation and forgiveness—and to the fact that the parties thereafter lived together under the usual conditions of living. There was no error in refusing the instruction.

V. There was testimony tending to show that the appellant,

922

STATE v. FLORY.

[203 Iowa

some five or six weeks before the death of his wife, purchased an ounce of bichloride of mercury of a druggist in Iowa City; that he said he wanted it to kill dogs, and signed an assumed or fictitious name on the poison register, and gave a false address. The appellant asked an instruction to the effect that, in order to convict, the jury must find beyond a reasonable doubt that the defendant purchased bichloride of mercury of the druggist named, at Iowa City, on the date claimed.

4. CRIMINAL LAW: reasonable doubt: circumstance tending to show guilt.

Under the evidence, we think that the purchase by appellant of bichloride of mercury, as claimed by the State, was but a circumstance, although manifestly a very strong one, tending to show guilt. There was testimony that, for some weeks prior to her death, the deceased had been taking, under the direction of a physician, certain powders that in form and color resembled bichloride of mercury in powdered form; that these powders were supplied by the doctor in bulk, and a supply had been so given to the defendant on the day of the night decedent died; that, on an occasion when appellant prepared the medicine for his wife, she asked him what he put in it that made it taste so bitter, and said it burned her throat so she could not spit it up or swallow it, but that it was easier to swallow it, and within fifteen minutes she was sick; that he replied, "Vina, what do you accuse me of that for, because you know I am innocent," and later said it might have been because he left the spoon in the medicine. There was testimony that bichloride of mercury has a "metallic, acrid taste, very disagreeable, bitey, burning, and cutting." There was testimony of the finding of over thirty grains of bichloride of mercury in the body more than could be accounted for by the embalming, and that that found in the contents of the stomach was placed there not over 24 hours before death, and probably less.

In *State v. Blydenburg*, 135 Iowa 264, relied upon by appellant, where the defendant was accused of the commission of murder by the administration of arsenic, it was said that:

"* * * the possession by him of arsenic at the time of the alleged offense was a necessary condition of his guilt. It was very important, therefore, for the State to trace, if possible, that particular poison to his hands."

It was held in that case that testimony that the defendant

had purchased "Rough on Rats" did not, in the absence of evidence that the article purchased contained arsenic, establish his possession of that poison. The question there arose on the sufficiency of the evidence to sustain the conviction. In the state of the record here, it was for the jury, not for the court, to say whether a finding that appellant purchased bichloride of mercury in Iowa City, and on the particular date claimed by the State, was necessary, in order to convict. The court instructed, in substance, that, if the jury had a reasonable doubt as to the sufficiency of the evidence to prove each circumstance necessary to reach a conclusion of guilt, a verdict of not guilty should be returned. There was no error in refusing the instruction asked.

VI. There was no error in refusing an instruction on the subject of the identification by the druggist in Iowa City of the appellant as the purchaser of bichloride of mercury, that said that evidence relating to the identity of persons is "exceedingly fallible."

5. CRIMINAL LAW: trial: province of jury: fallibility of testimony.

VII. The court gave an instruction relating to the death certificate, saying, in substance, that the law made the certificate presumptive evidence of the facts therein stated, but that the presumption was rebuttable. The instruction is not open to the objections urged that it unduly emphasized facts tending to rebut the certificate. It directed the jury to consider all facts and circumstances fairly tending to show the cause of death.

VIII. Appellant complains of the refusal to give certain requested instructions on circumstantial evidence, and of an instruction of the court on the subject. It is not pointed out wherein the instruction given failed to sufficiently and correctly cover the matter of those requested, nor is that given open to the criticisms made of it.

IX. Appellant attacks the constitutionality of Section 4728, Code of 1897 (Section 12911, Code of 1924), which provides that all murder which is perpetrated by means of poison is murder in the first degree, on the ground that, it is said, the accused is thereby deprived of the right to have the jury determine the presence or absence of malice, intent to kill, deliberation, and premeditation. The authorities cited by counsel do not sustain the claim of the unconstitutionality of the

6. HOMICIDE: murder by poison: constitutional right to declare effect.

statute. It has been the law of this state for many years, and identical provisions are to be found in the statutes of most of the states. We are referred to no case where the constitutionality of such a statute has been even questioned.

There are no common-law crimes in this state. *Estes v. Carter*, 10 Iowa 400; *State v. Banoch*, 193 Iowa 851. It is said in 16 Corpus Juris 67:

"The legislature in creating an offense may define it by a particular description of the act or acts constituting it, or it may define it as any act which produces, or is reasonably calculated to produce, a certain defined or described result * * *. In the absence of provision to the contrary, a statute may punish an offense by giving it a name known to the common law, without further defining it, and the common-law definition will be applied."

See, also, *State v. Twogood*, 7 Iowa 252.

In *State v. Wells*, 61 Iowa 629, we said of the contention that there might be a homicide by the administration of poison and the perpetrator not necessarily be guilty of murder:

"It seems to us that the meaning of the statute is that the administration of the poison constitutes the required deliberation and premeditation, and evinces an intent to kill, provided it is 'unlawfully' administered, and 'without a good intention.' That is to say, that the administration of the poison unlawfully, with a bad motive or intent, under the statute constitutes murder, if death ensues, and that it is immaterial whether or not there is a specific intent to kill."

In *State v. Bertoch*, 112 Iowa 195, we held erroneous an instruction which permitted a conviction of murder in the second degree under an indictment charging murder perpetrated by poisoning, and, after quoting the statute, said:

"Such a killing is not only by malice aforethought, but is by statute declared to be willful, deliberate, and premeditated, because in the very nature of the act it must be so."

In *State v. Burns*, 124 Iowa 207, an instruction was approved that said that, where murder is perpetrated by means of poison, the law implies, because of the nature of the act, that it was done intentionally, willfully, deliberately, premeditatedly, and with malice aforethought, and therefore declares it to be murder in the first degree.

There can be no doubt of the constitutional power and authority of the legislature to so define what shall constitute murder in the first degree.

X. In this connection, it appears to be the contention of counsel that the court should have submitted to the jury the question of appellant's guilt of murder in the second degree, or
7. HOMICIDE: included offenses: murder by poison.
of manslaughter. We have repeatedly held that, under an indictment for murder by poisoning, it was not error to fail to so instruct. *State v. Cole,* 63 Iowa 695; *State v. Wells,* supra; *State v. Bertoch,* supra; *State v. Burns,* supra; *State v. Grba,* 196 Iowa 241, and other cases there cited. Cases from other jurisdictions may be found where a different rule is followed and a different construction of similar statutes adopted, but we are not disposed to depart from our own precedents so long established and so frequently reaffirmed.

XI. The principal contention on behalf of the appellant is that the court instructed that the defendant must be found
8. HOMICIDE: included offenses: absolutely discredited testimony.
guilty of murder in the first degree or acquitted, and did not submit to the jury the question of his guilt of an assault with intent to kill or inflict a great bodily injury, or of the crime defined by Section 4773, Code of 1897, now Section 12918, Code of 1924, of mingling poison with food, drink, or medicine, with intent to kill or injure another.

It must be conceded that, where there is evidence from which it might be found that death did not result from an unlawful assault by the defendant, but from some other and independent cause, it is proper, under an indictment charging murder by assault, to submit to the jury the question of his guilt of the various grades of assault of which there is evidence. *State v. Shaver,* 197 Iowa 1028; *State v. Marish,* 198 Iowa 602. But it is well settled that a failure to instruct as to an included offense is not error where the evidence shows that the accused is guilty of the higher offense or is not guilty of any offense at all. *State v. Grba,* supra, and cases there cited.

Whether the evidence in the instant case showed that the appellant was guilty of murder or of no offense at all must depend upon whether there was any evidence that the deceased died from some other cause than bichloride of mercury poison-

ing. There was uncontradicted evidence of facts which would seem quite conclusively to exclude every other possible cause of death than poisoning by bichloride of mercury. There was uncontradicted testimony that, on a post-mortem examination of the body of deceased, slightly less than 2 grains of bichloride of mercury were found unabsorbed in the contents of the stomach, over 60 grains in the tissues of the stomach, and an undetermined amount in the walls of the intestines; and that a lethal dose of bichloride of mercury was from 2 to 5 grains. The testimony was uncontradicted that the autopsy showed the other organs of the body to be healthy and normal. The body had been embalmed by the use of a fluid containing bichloride of mercury, but there was uncontradicted testimony that only about half of the contents of a 13-ounce bottle of the fluid was so used, and that it contained only 3½ grains of bichloride of mercury to the ounce, or less than 25 grains in the quantity used in the body.

There was also in evidence, it is true, the death certificate of the attending physician, which gave the cause of death as myocarditis and aortic insufficiency; and this certificate, it is also true, is by statute made presumptive evidence of the facts therein stated. Upon the former appeal, we said, while recognizing the fact of the admissibility of the certificate, under the statute, that its probative force might have been easily overcome, but that this did not determine its admissibility. It is not, of course, the province of the court in such a situation in a criminal case to weigh the evidence, but the question whether there is any evidence upon a given point is always for the court. *State v. Cole,* supra. The physician who made the certificate testified that he made no preliminary examination of the deceased, to determine the cause of death; but that later, the body was exhumed, and an autopsy held, in which he assisted; and that, "After I saw the heart itself, the cause of death previously given by me was absolutely inconsistent;" and that he did not then think she died of acute myocarditis or aortic insufficiency.

Under this state of the record, are we required to say that the certificate of death giving the cause of death as disease, in connection with the testimony of the one who made it that he not only made no examination at the time, to determine if it was correct, but that his subsequent examination convinced him

that it was not, and with the uncontradicted evidence of the finding in the body of a quantity of the poison many times that necessary to produce death, and not accounted for by the embalming of the body, was any evidence that death was not caused by the poison? The statement of the certificate that death was caused by disease was not only utterly discredited as incorrect and mistaken, by the undisputed testimony of the one who made it, but the contrary was conclusively shown by the physical fact—as to which there was no contradiction—of the presence in the body of an amount of the poison at least seven times the largest amount required to cause death.

If uncontradicted evidence should show a bullet wound through the heart of a man who was, before death, in perfect physical condition, would a death certificate stating death to have been caused by typhoid fever, but shown by undisputed evidence to have been fraudulently or mistakenly made, be any evidence that death was caused by anything but the bullet? The evidence here is not less conclusive of the cause of death than in the case supposed. It could not be claimed that any writing relied upon as evidence of the facts stated therein could not be impeached for fraud or mistake. When it was shown by the uncontradicted testimony of the one who made it that the statement of the cause of death found in the certificate was mistakenly made, and also by the undisputed physical facts that it was incorrect, does the statute making it presumptive evidence give it such force or effect to prove a fact mistakenly and therefore untruthfully stated in it as to require us to say that it alone, in such circumstances, was, nevertheless, such evidence that the cause of death was as there incorrectly and mistakenly stated that the court should have submitted to the jury the question of appellant's guilt of included offenses below felonious homicide? We think that neither the due observance of essential forms or technicalities of procedure, nor the proper preservation of the safeguards which the law throws about one charged with crime, will justify such a disregard of undisputed facts or such an exaggeration of the force and effect of what is, at best, aside from the evidentiary character given it by statute, but the unverified, ex-parte, and, according to his own testimony, incorrect statement of the attending physician. We are of the opinion that the death certificate alone, shown by undisputed evidence

to contain an incorrect statement of the cause of death, was not such evidence that the cause of death was as therein incorrectly and mistakenly stated as to require the court to submit offenses below felonious homicide.

We are, of course, not to be understood as saying that the cause of death was not a question for the jury, in the determination of the guilt or innocence of the accused. That ultimate question must always be for the jury, and this would be true although the certificate was not in evidence, or if it gave the cause of death as mercury poisoning. The court properly and plainly so instructed the jury. But that is not the question here. The inquiry now is whether there was any evidence that the cause of death was other than mercury poisoning; and, as stated, the question whether there is any evidence upon a given point is always a question for the court.

Certain expert witnesses expressed the opinion, in answer to hypothetical questions, that one exhibiting the symptoms described in the questions was not suffering from bichloride of mercury poisoning. The questions propounded did not include the fact of the finding of the poison in the body in a deadly quantity in excess of that used in the embalming, and, for that reason, the testimony is of no value in determining whether there was evidence that death was not caused by poison.

Whether the offense defined by Section 12918 would, under any circumstances, be included in a charge of murder by poisoning, we do not determine.

XII. It is insisted that counsel for the State was guilty of misconduct in the opening argument. While the remarks complained of were somewhat impassioned, we cannot say that they were not legitimate comments upon, and inferences from, the testimony. They were not such as to require a reversal.

XIII. It is again, as on the former appeal, urged upon us that the evidence is insufficient to support the verdict. We have again carefully examined the record, and are content with our former observation that the contention is without merit.

We find no prejudicial error, and the judgment is—*Affirmed*.

All the justices concur.