STATE OF IOWA, Appellee, v. JOHNNIE CRITELLI, Appellant.

No. 46798.

SEPTEMBER 17, 1946.

REHEARING DENIED NOVEMBER 15, 1946.

Charles W. Bowers, Carl S. Missildine, and Milton W. Strickler, all of Des Moines, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, and Vernon Seeburger, County Attorney, for appellee.

HALE, J.—The grand jury of Polk county, on September 18, 1944, by indictment accused Johnnie Critelli (the defendant herein) and twelve others of the crime of conspiracy, as defined in section 13162 of the Code of 1939 (section 719.1, Code of 1946), and charged that Johnnie Critelli and the others named unlawfully conspired together with fraudulent and malicious intent and purpose to do an illegal act injurious to public trade, health, morals, or police by illegally selling, keeping for sale, possessing, transporting, and trafficking in intoxicating liquors.

To this indictment the defendant, Johnnie Critelli, entered a plea of not guilty and demanded separate trial. Trial·was begun on November 15, 1944, the jury was sworn, and some of the witnesses for the prosecution testified, but, for the reason that the assistant county attorney appearing for the State became ill, the jury was discharged before verdict and the cause continued over the term, the defendant objecting. At the January term the case was continued on the application of defendant to the March term. On the trial at the March term.1945 the jury failed to agree. The case was assigned for trial at the May term 1945; defendant entered a plea of former jeopardy, which was overruled, and trial was had, resulting in a verdict of guilty. The court overruled defendant's motion for new trial and exceptions to instructions, and entered sentence, and defendant appeals.

The errors claimed by Critelli, the appellant, are: in the refusal of the court to sustain the plea of former jeopardy; errors in the selection of the jury; in the rulings of the court

on admission of portions of the State's evidence; error in the court's instructions; and in the refusal of the court to give appellant's instructions.

The appellant was the owner of an eating place and tavern at 2202 Harding Road in Des Moines. At the same time another tavern was operated at 1200 West Locust Street in Des Moines, under the name of Johnnie's Uptown Café. It is claimed by appellant that this place was owned and operated, through employees, by Carmella Critelli, a defendant in the indictment and the wife of appellant. But there is evidence that the receipts for rent were made out to appellant and that he had a lease for the years 1943 and 1944, and the fixtures and moneys and credits were assessed in appellant's name. The receipts from the Uptown Café were deposited in a joint bank account under the name of Johnnie Critelli's Uptown Place, and withdrawn by either the appellant or Carmella. Another defendant, Don Madero, was manager of the Uptown Café, and some of the defendants named in the indictment were employees. There is testimony showing sale of intoxicating liquor by the drink to many customers, and there were various raids on these places by police officers, resulting in the seizure of liquor, some in bottles with seals of other states. At one of these raids on the Uptown place the appellant was brought from 2202 Harding Road to open the vault. He was present at other raids, and generally at one or the other of the two taverns.

It is unnecessary to set out in detail the evidence in relation to his participation in the many violations of the liquor laws in connection with various persons named in the indictment as codefendants. Appellant admitted putting liquor sold at his place back of the bar and that it was sold to customers; that he bought liquor of bootleggers whose names he did not remember, nor did he remember the number of times he bought from them. He helped negotiate the purchase of a truck for one Weathers, and a loan to pay for it, and this truck was afterward used for the illegal transportation of liquor by one Snell. Sales of liquor were made by Snell, also named in the indictment as a codefendant. Checks in payment for some of these sales, in large amounts, when cashed had appellant's endorsement. These

are examples only of some of the evidence tending to show appellant's operations in the illegal liquor traffic but by no means all. From a reading of the record we are satisfied that the evidence was sufficient to authorize the jury to find that appellant was operating this traffic in connection with other defendants named in the indictment. His own connection therewith, under the evidence, cannot be disputed.

I. The appellant, while of course not admitting the sufficiency of the evidence, directs his main objections to alleged errors of the court in the conduct of the trial. His first assignment of error is the action of the trial court in discharging the jury which had been impaneled and sworn, because of the illness of the assistant county attorney, which he alleges was without legal justification and constituted jeopardy.

The first trial began on November 15, 1944. Edwin S. Thayer, assistant county attorney, had been in charge of the case before the grand jury and prior to its presentation to that body; and, under order of Mr. Kuble, the county attorney, represented the State in the trial in the district court. The jury was impaneled and sworn on November 18th. The testimony of several witnesses for the State was taken when Mr. Thayer became seriously ill, the county attorney at the time being at Rochester, Minnesota, for medical examination. On the morning of Monday, November 20th, the other assistant county attorneys, who had no previous connection with the case, filed a motion for continuance based on Thayer's illness, which motion was resisted by appellant, but the motion was sustained by the court. There can be no doubt of the gravity of the assistant's illness nor that he was unable to proceed with the case at that term or for a long time later. There was evidence and the other assistant county attorneys testified that they were unable to proceed without such preparation as would carry the case over the term, and they were engaged also in other duties. The appellant suggests that the court could have continued the case for a few days without discharging the jury, but by order of the court the jury had been segregated.

Appellant cites the law as to jeopardy as given in the Fifth Amendment to the Constitution of the United States: "* * *

1276

nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb;'' and the general definition in 1 Wharton's Criminal Law, Twelfth Ed., section 395:

''Jeopardy is the peril and danger to life or liberty in which a person is put when he has been regularly and sufficiently charged with the commission of a crime; has been arraigned, and pleaded to such charge; has been put upon his trial before a tribunal properly organized and competent to try him for the offense charged; and a jury has been duly impaneled from persons competent to sit on the trial, and duly sworn to try the cause, and charged with due deliverance.''

█ He argues that jeopardy begins when the jury has been impaneled and sworn. However, the common-law rule embodied in the United States Constitution above is not the same as is found in our State Constitution: ''No person shall after acquittal, be tried for the same offence.'' Constitution of Iowa, Article I, section 12; and the rule found in the Code of 1939, section 13807 (Code of 1946, section 777.20), is as follows:

''A conviction or acquittal by a judgment upon a verdict shall bar another prosecution for the same offense, notwithstanding a defect in form or substance in the indictment on which the conviction or acquittal took place.''

And as to retrial, section 13913, Code of 1939 (section 784.4, Code of 1946), provides:

''In all cases where a jury is discharged or prevented from giving a verdict, except where the defendant is discharged during the progress of the trial, or after submission to it, the cause may be again tried at the same or another term of the court.''

The only pleas to the indictment are found in section 13799, Code of 1939 (section 777.11, Code of 1946):

''There are but three pleas to the indictment— (1) guilty, (2) not guilty, or (3) of a former judgment of conviction or acquittal of the offense charged.''

█ Under these provisions of our Constitution and the Code, we have many times held that the discharge of a jury prior to a verdict of conviction or acquittal is not necessarily a

bar to a subsequent trial of an accused under the same indictment. State v. Redman, 17 Iowa 329; State v. Tatman, 59 Iowa 471, 13 N. W. 632; State v. Parker, 66 Iowa 586, 24 N. W. 225; State v. Falconer, 70 Iowa 416, 30 N. W. 655; State v. Pierce, 77 Iowa 245, 42 N. W. 181; State v. Kappen, 191 Iowa 19, 180 N. W. 307; State v. Vaughan, 29 Iowa 286. These cases indicate that under the Iowa rule there must be an acquittal or such action or conduct of the court as amounts to an acquittal to warrant a discharge under the plea of former jeopardy. State v. Redman, supra; State v. Parker, supra; State v. Dickson, 200 Iowa 17, 202 N. W. 225.

 There is a marked distinction between the rule laid down by the Iowa Constitution, with the Code provisions above quoted, and the old common-law rule as to jeopardy, but even under jeopardy as defined by the common law we are satisfied that there was no jeopardy in the instant case. There are exceptions to the strict application of the common-law rule.

"While the rule is well established that under appropriate conditions a court may discharge a jury after it is impaneled and sworn, it is frequently questioned under the doctrine of double jeopardy. Under the strict practice which formerly prevailed, in England at least, the discharge of the jury in a criminal case for any cause after the proceedings had advanced to such a stage that jeopardy had attached, but before a verdict of acquittal or conviction, was held to sustain a plea of former jeopardy, and, therefore, to operate practically as a discharge of the prisoner. In deference, however, to the necessities of justice, this strict rule has been greatly relaxed, and the general modern rule is that the court may discharge a jury without working an acquittal of the defendant, in any case where the ends of justice, under the circumstances, would otherwise be defeated. The court is to exercise a sound discretion on the subject, and it is impossible to define all the circumstances which would render it proper for the court to interfere. * * * In order, however, to justify an exercise of this power, the occasion for it must be very cogent, or, as some courts have said, there must be an absolute or manifest necessity." 15 Am. Jur. 75, section 406.

See, also, 22 C. J. S. 394, 395, sections 258, 259; United States v. Watson, 28 Fed. Cas. 499, Case No. 16,651. These general statements are followed by examples of what facts constitute manifest necessity, and appellant does not seriously dispute that if there is a manifest necessity or emergency the court is justified in a discharge of the jury. This manifest necessity may arise from various causes, as illness, disability, or death of a juror, judge, or counsel, or a member of his family, expiration of a term of court, defective indictment, disqualification, or misconduct of a juror, or absence of the accused. State v. Tatman; State v. Redman; State v. Vaughan; State v. Kappen; State v. Parker; State v. Falconer; State v. Pierce, all supra; and State v. Callendine, 8 Iowa 288.

The case of United States v. Watson, supra, which is cited by appellant and appellee, differs in its facts from the case at bar. The decision in the Watson case, while holding that the mere illness of the district attorney or the mere absence of witnesses would not be a justification for the discharge of the jury, bases its decision largely upon the failure of the minutes to show any further justification. They do not show that the illness occurred after the jury was sworn or that it was impossible for the assistant district attorney to conduct the trial. On this failure of the record to show a manifest necessity the court acted in sustaining the plea. In that case, the court, in its opinion, says that it is impossible, within the definition cited from Wharton's Criminal Law, to lay down any inflexible rule as to what causes would and what causes would not be sufficient to warrant the exercise of the discretion which the court possesses.

In the Watson case there was no such showing of necessity as in the present case. We have referred to the segregation of the jury and that the assistant was, under the order of the county attorney, to conduct the trial; that the other assistants, engaged in other work, were unable to proceed. To have attempted to hold the unemployed and segregated jury even for five days, and to expect new counsel to prepare a case of this character, with which they were unacquainted and in which more than forty witnesses were to be examined, would be unreasonable, and we think the court was justified in taking the

course it did. It not only exercised the discretion which the authorities hold it was authorized to do, but did what the circumstances compelled. We are satisfied that the situation was such as to constitute an emergency, not created by any action of the representatives of the State, and which could not have been foreseen.

Other cases cited by appellant are not persuasive. Cases cited are State v. Whitman, 93 Utah 557, 74 P. 2d 696, which gives no instances when a jury may be discharged; State v. Little, 120 W. Va. 213, 197 S. E. 626, no showing of diligence as to absent witnesses; People v. Barrett, 2 Caines (N. Y.) 304, 2 Am. Dec. 239, unpreparedness; Mount v. State, 14 Ohio 295, 45 Am. Dec. 542, nolle prosequi entered and jury discharged; Pizano v. State, 20 Tex. Ct. App. 139, 54 Am. Rep. 511, absence of witnesses and no showing of diligence. Other cases are to the effect that the circumstances must be in the nature of an emergency, that the cause cannot arise from unpreparedness, about which propositions there can be little dispute. We hold there was no error.

■ II. The second assignment of error is to the action of the court in discharging certain jurors after they had been accepted by both State and appellant. He asserts that ten jurors in all were excused but the abstract and amended abstract show only the examination of six. None of the jurors had been sworn. In all cases they presented apparently sufficient personal reasons for excuse from service. They were excused either on account of ill health or on account of having children at home and the difficulty of making provision for their care.

The appellant, citing 31 Am. Jur. 616, section 81, argues that the court is vested with no right of peremptory challenge and cannot, over the objection of a party, reject a qualified juror acceptable to the parties except for sufficient cause. But in that connection he also cites 31 Am. Jur. 702, section 195, which holds that the court, in its discretion, may excuse or discharge any person because of reasons personal to such person which would render his service as a juror oppressive. This seems to be the general rule. Other authorities cited by appellant are largely from other states, with varying statutes, some of which require that accused be furnished with a jury list at

a certain period before the commencement of the trial. In others each juror by statute was sworn as accepted. 35 C. J. 420, section 488, cited by appellant, does not bear out appellant's contention, nor does People v. McQuade, 110 N. Y. 284, 18 N. E. 156, 1 L. R. A. 273; or Welch v. Tribune Pub. Co., 83 Mich. 661, 666, 47 N. W. 562, 563, 11 L. R. A. 233, 21 Am. St. Rep. 629, in which it is said:

"We do not think the judge has a right to reject a qualified juror with whom the parties are satisfied, unless for sufficient cause; and such cause should appear upon the record."

In addition to the presumption referred to later, in the present case the cause does appear on the record. See 35 C. J. 419, section 485.

Under our statutory provisions (section 10844, Code of 1939, section 607.3, Code of 1946), the court is given discretion in the matter of excuses from service. This section provides:

"Jurors excused. Any person may also be excused from serving on a jury when his own interests or those of the public will be materially injured by his attendance, or when the state of his own health, or the death or sickness of a member of his family, requires his absence from court; provided, however, that the court may, in its discretion, excuse any one or more of the jurors for any cause which to the court may seem advisable."

There is nothing in the statutes which fixes any time in which this power may be exercised. Before the jury is sworn there is no reason to hold that, in the court's sound discretion, a juror may not be excused for cause, for personal reasons found sufficient. Our statutes providing exemptions from service are not exclusive. 31 Am. Jur. 596, section 56; id. 616, sections 81, 82.

It is a general principle that a party litigant or an accused on trial is not entitled to any particular juror or jurors. A legal and impartial jury is all that he is entitled to. In enumerating various causes for excusing jurors, it is stated in 35 C. J. 307, section 310:

"It does not follow, however, that because certain causes have been declared to be sufficient to justify the court in excus-

ing jurors that the sufficiency of excuses in general must be considered a matter of law; on the contrary the reasons are so numerous that they cannot be specified beforehand or reduced to any set rule but must be left to the court to dispose of as they arise, so that it is uniformly held that whether a juror shall be excused is a matter resting within the sound discretion of the court, the exercise of which will not be interfered with unless it is clearly shown to have been abused to the actual prejudice of the complaining party. But there must be a cause, and it must not be a trivial one.''

See, also, section 314, that it will be presumed, in the absence of evidence to the contrary, that the action of the court was based upon sufficient grounds.

In this case there is no evidence that the jurors summoned in place of excused jurors were not qualified or that the strikes or peremptory challenges ·against the jurors drawn to replace the excused persons were exhausted. There is no showing of prejudice. See State v. Fielding, 135 Iowa 255, 112 N. W. 539. We are satisfied that the court acted within its sound discretion, that the jurors were properly excused, and without prejudice to appellant.

III. The appellant alleges that the court erred in admitting the State's prejudicial evidence, not legally admissible. This is a general statement which we may disregard unless the particular error complained of is pointed out. State v. Terry, 207 Iowa 916, 223 N. W. 870; State v. Campbell, 213 Iowa 677, 239 N. W. 715. See, also, State v. Perkins, 208 Iowa 1394, 227 N. W. 417; State v. Brûns, 211 Iowa 826, 232 N. W. 684; State v. Briggs, 207 Iowa 221, 222 N. W. 552. In the following part of the assignment appellant refers to the testimony of Phil Phillipson, by reference to certain pages of the abstract, and alleges that at no time during the trial was there any connection shown between Critelli and Phillipson, and the latter's damaging evidence was not connected. up with the conspiracy, if any existed. This is the only specific reference to the testimony to which objection is made, if it be termed specific, except an objection in this division to the admission of two checks, Exhibits 8 and 9. The objection to the testimony of other witnesses is by reference to the abstract, but the error is not other-

wise pointed out except by the statement advanced in argument that objection to the testimony of Phillipson applies to them. This evidence was admitted out of order, and properly so, on the State's offer to connect it up by showing a prima facie case of conspiracy later.

The witness Phillipson, employed by the Rainbow Club, testified that Exhibits 8 and 9, two large checks, were given to Lester Snell for whisky. These checks were afterward brought to appellant, who cashed one and endorsed the other and arranged for Snell to have it cashed at a night club known as "Babe's." Snell used in his operations a truck, purchased by Critelli for Bill Weathers, his employee. Without unduly extending this opinion by going further into the testimony it is sufficient to say that an examination of the record shows that testimony discloses acts and circumstances which in some manner connect the appellant, with various other defendants named in the indictment, with the violations of the liquor laws.

Subdivision 4 of this assignment of error is general, and objects to the State's evidence as remote, vague, speculative, circumstantial evidence, based upon insufficient remote circumstantial facts. Such a general statement, like the other assignment, cannot be considered without further specification. Of course, appellant does not contend that conspiracy cannot be established by circumstantial evidence. As to proof, see 11 Am. Jur. 570, section 38; 12 C. J. 633, section 226; 15 C. J. S. 1140, section 92; and our recent cases of State v. Schreck, 231 Iowa 542, 1 N. W. 2d 690–694; State v. Schenk, 236 Iowa 178, 18 N. W. 2d 169, especially Division III of the latter.

The order of admission of testimony must necessarily be discretionary with the trial court. State v. Walker, 124 Iowa 414–417, 100 N. W. 354; State v. Moore, 217 Iowa 872, 251 N. W. 737; State v. Arthur, 135 Iowa 48, 109 N. W. 1083; State v. Schreck, supra; State v. Schenk, supra; State v. Terry, supra. We find no error in appellant's third assignment.

IV. We have determined, as stated in the preceding division, that the evidence shown by the record was sufficient to submit to the jury the question of the guilt or innocence of the appellant. He makes various exceptions to the instructions, especially Instructions Nos. 6, 7, 8, and 10. The objection to

No. 6 is that it emphasizes and gives undue prominence to evidentiary facts, brought out by the State, and without stating those facts favorable to the defense which it belittles, and is misleading. The instruction told the jury that in considering the appellant's guilt or innocence it was immaterial whether or not others were guilty of violating the law as to intoxicating liquors and such violation by others would not constitute a defense. Also, that the payment of fines for violations would not be a defense to the crime of conspiracy and that sale of intoxicating liquor without profit to the seller did not make an otherwise illegal sale thereof legal. Appellant urges and cites various decisions of this court to the effect that the office of an instruction is to state the rule of law applicable to the matter to be determined and not to marshal the evidence or give undue prominence to any particular phase or feature of the fact case made by either party; that the court should not emphasize or give undue prominence to evidentiary facts. The rules of law argued by appellant may be conceded but we do not think the instruction is open to the objections. The record does not show that the evidence to which he refers was entirely that of the State. The evidence was before the jury and the instruction did not state evidentiary facts but only the law as to certain classes of evidence which they were entitled to consider. The rule is not violated by the mere fact that the court, in instructing the jury, charges on a particular issue, theory, or defense, or alludes to particular testimony or parts of the evidence, where the instruction is given in such form and manner that, particularly when viewed with other instructions, it cannot reasonably be understood by the jury as an intimation that the court attaches any undue importance to the issue, contention, theory, or defense charged on, or to particular facts or circumstances, or particular parts of the evidence alluded to. 23 C. J. S. 896, section 1308; 16 C. J. 1040, section 2480; State v. Brown, 216 Iowa 538, 245 N. W. 306; State v. Bevins, 210 Iowa 1031, 230 N. W. 865; State v. Flory, 203 Iowa 918, 923, 210 N. W. 961; State v. Clark, 180 Iowa 477, 163 N. W. 250. We do not think there was error in this instruction. The jury were properly instructed as to the law applicable to the evidence introduced and were repeatedly instructed that the gist of the

1284

offense was the illegal combination. There was no undue prominence given to the evidence and they were told that consideration must be given to all the evidence.

■ The same objections, or substantially the same, are made to Instructions Nos. 7 and 8, which refer to the possession of government licenses and violations of the intoxicating-liquor laws by the defendants. Appellee argues also that no request was made to have these instructions, correctly stating the law, made more definite or specific, or to have them broadened, amplified, or made more comprehensive, and therefore the complaint against them is not tenable. This is the rule. State v. Viers, 82 Iowa 397, 48 N. W. 732, and cases cited; State v. Brandenberger, 151 Iowa 197, 130 N. W. 1065, and cases cited; State v. Phipps, 95 Iowa 487, 64 N. W. 410; State v. McCarty, 210 Iowa 173, 230 N. W. 379. We need not consider them separately, as the same rules that apply to Instruction No. 6 would apply to these.

■ V. Instruction No. 10 is assailed as misleading and confusing, and it is charged that:

"The jury should not have been permitted to consider any acts and declarations of several of the named defendants, namely [naming them], for the reason that the State had failed to make out a prima facie case of conspiracy against said defendants and the defendant, Johnnie Critelli."

We may say first that the instruction is neither misleading nor confusing. It is long, but in substance, after defining conspiracy, relates to acts and declarations of the conspirator, even in the absence of the other conspirators, and correctly states the law in relation thereto. The jury were properly told that they must first find the fact of conspiracy; unless they so found they should reject any testimony as to statements or acts not made or done in the presence of appellant; but if they found, beyond a reasonable doubt, that the appellant, Johnnie Critelli, did conspire, they might consider the acts, declarations, and statements made during the existence of such conspiracy. The fact as to whether or not there was a conspiracy was for the jury and the record is sufficient to permit the submission of such fact to them.

■ VI. Appellant requested various instructions which were refused by the court. These refer mainly to the consideration of overt acts. The court in its instructions, and particularly in its Instruction No. 10, correctly stated the law. See State v. Schenk, supra. So far as the requested instructions are correct they were substantially given in the court's instructions. Other objections are made by appellee to the argument of appellant in relation to these proposed instructions, and other cases cited in support of appellee's argument, but these we need not discuss in detail. There was no error in the court's refusal.

The jury were correctly instructed on the law and the facts developed by the evidence, which evidence was sufficient to submit to the jury the question of appellant's guilt or innocence. We find no error which would warrant reversal, and the cause is affirmed.—Affirmed.

All JUSTICES concur.