THE PEOPLE OF THE STATE OF NEW YORK ex rel. LILA JIMERSON, Relator, *v.* CHARLES A. FREIBERG, Sheriff of the County of Erie, Respondent.

Supreme Court, Erie County, June 19, 1930.

*John S. McGovern* and *Thomas F. Rogers*, for the relator.

*Guy B. Moore, District Attorney*, for the respondent.

HARRIS, J. The relator, on a writ of habeas corpus, seeks her release from the custody of the sheriff of Erie county. Such sheriff, as his return to the writ of habeas corpus herein, certifies that the relator is in his custody by virtue of a bench warrant issued out of the County Court of Erie county after an indictment charging her with the crime of murder in the first degree had been found against such relator by the grand jury of such court. Both in her petition and in her traverse to the return, the relator claims that she has once been put in jeopardy on a trial of such indictment, and that she is about to be tried again on the same indictment, and that by such proposed second trial she would be twice put in jeopardy, in violation of the Constitution of the State of New York (Art. I, § 6): " No person shall be subject to be twice put in jeopardy for the same offense."

A person has been put in jeopardy once if he has been convicted or acquitted or if he has been placed on trial and the jury drawn and the trial has been terminated arbitrarily by the court and without his consent before verdict. ( *People ex rel. Bullock* v. *Hayes*, 215 N. Y. 172; *People* v. *Montlake*, 184 App. Div. 578; *People ex rel. Stabile* v. *Warden*, 139 id. 488; affd., 202 N. Y. 138;

*People* v. *Goldfarb*, 152 App. Div. 870; affd., 213 N. Y. 664; *People* v. *Barrett*, 2 Caines, 304.) And if he has once been in jeopardy on a charge of crime, he may not again be prosecuted for the same crime. (Amendments to Constitution of the United States, art. V; State Const. art. I.)

The testimony taken before this court on this proceeding developed the following facts:

By an indictment returned on the 10th day of March, 1930, to the County Court of Erie county, the grand jury of that court charged the relator herein with the crime of murder in the first degree; on the same day she was arraigned and plead not guilty to such indictment; subsequently, on her statement that she was without means to employ counsel, attorneys were assigned by the court for her defense, and a trial of the defendant on such indictment began in the County Court of Erie county on the 19th day of March, 1930, and continued until the evidence on both sides was closed on the 31st day of March, 1930, at which time the court took a recess until nine-fifteen A. M. on the 1st day of April, 1930; at that time counsel were to proceed with their summation and the court was to submit the case to the trial jury. On the 1st day of April, 1930, the relator left the Erie county jail, in company with an officer, for the purpose of appearing at the adjourned session of her trial; on her way from the jail to the court she complained to the officer in charge of her that she thought she was ill, and when she arrived at the court and had been seated, she again drew the attention of the officer in charge of her and said that she was ill and showed her a bloody handkerchief which she had removed from before her mouth, stating that she had had a hemorrhage; she was removed to a rest room, had an attack of nausea, apparently collapsed and was taken to the Buffalo City Hospital; the court recessed until the following morning, April second, and that morning again recessed until the afternoon of the same day. In the meantime the court designated certain physicians to make a physical examination of the relator, and a report of such physicians was made to the court that the relator was in such physical condition that it would be necessary for her to have at least two weeks' absolute rest in the hospital, and that she could not, with safety to her health, proceed with the trial on the second day of April; the physicians based their report to the court upon the history given to them of a hemorrhage and previous pulmonary tuberculosis suffered by the relator. On receiving such report from the physicians and in the absence of the relator who was then in the hospital, but with the consent of her attorneys and the district attorney, the court declared a mistrial, due to the ill-health of the

relator, and subsequently discharged the trial jury from further consideration of the indictment against her. On April 4, 1930, the court ordered the County Court to be convened in the Buffalo City Hospital, and there were present in the auditorium of that hospital the special county judge, who had presided at the trial, the district attorney, the attorneys for the defendant, and the clerk of the court; at that time there was wheeled into such auditorium and into the presence of the persons hereinbefore named, the relator, who was in hospital attire and lying on a wheel-cot. The relator claims to have no recollection of what occurred at this time and at this place, but the court records show that she was questioned as to her desire to withdraw her former plea of not guilty to the indictment, and the records show that such plea was withdrawn by her, and that she then pleaded guilty to the crime of murder in the second degree. The judge then stated that he deferred sentence. Following this, relator remained at the Buffalo City Hospital some twenty-seven days, practically all of which time she was confined to her bed or to her room, and during a good part of such time she suffered a rise in temperature. There were no evidences of hemorrhage except what occurred in the County Court on April second. Subsequent to such period of twenty-seven days she was returned to the county jail, and on the 2d day of May, 1930, she was again brought into the County Court, and then and there the district attorney moved sentence on the plea of murder in the second degree. At this time the relator informed the court that she desired to change counsel and that she released the counsel who had previously been assigned to her from any further duty to her in the premises, and that she desired to be represented by the counsel who appear for her in this proceeding. Such new counsel opposed sentence on the ground that the proceedings theretofore had were such that to proceed further against the relator on such indictment would place her twice in jeopardy. The court then stated that the original plea of not guilty to the indictment would stand; this without the consent, request or objection of the relator or of her new counsel. Subsequently this proceeding was brought.

A writ of habeas corpus proceeding is a proper means to pursue in raising the question of double jeopardy. (*People ex rel. Stabile* v. *Warden, supra; People* v. *Montlake, supra; People ex rel. Fish* v. *Smith,* 177 App. Div. 152.)

To support her claim that she will be put in double jeopardy if prosecution against her for the crime alleged in the indictment continues, the relator advances the following arguments:

(1) That the County Court had no right, in the absence of the relator and without her consent, to declare a mistrial;

(2) That the jury could only be discharged in the presence of the relator;

(3) That the acceptance of the plea of guilty of murder in the second degree and the subsequent proceedings thereon, amounted to an acquittal of the relator.

As to whether or not the court had a right to declare a mistrial without the consent of the relator, the rule in reference to this question is that the court has no right, arbitrarily or capriciously, to discharge a jury; that a jury may be discharged with the leave of the court and with the consent of the public prosecutor and of the defendant, but a jury may be discharged without the consent of the defendant only if, by the defendant's own act, he has brought about a condition under which such trial could not proceed with justice to all concerned, or if urgent necessity, or dire emergency, would prevent the doing of justice to all concerned. (*People ex rel. Stabile* v. *Warden, supra; People* v. *Barrett, supra.*)

In the proceeding at bar, either the relator deceived the court by the appearance of a hemorrhage or she really had a hemorrhage, and the physicians having received a history of a hemorrhage and of previous pulmonary trouble, advised the court that it would be dangerous to the health of the relator to proceed with the trial, and either one of these causes, the fault of the relator or her real illness, was sufficient reason for the court to declare a mistrial, and this being so, the relator could be required to stand trial again on the indictment. (*People ex rel. Stabile* v. *Warden, supra; People* v. *Barrett, supra; Fails* v. *State,* 60 Fla. 8; *Rex* v. *Edwards,* [1812] 3 Campbell's Nisi Prius, 207; *King* v. *Stevenson,* [1791] 2 Leach Crown Cases, 546.)

It having been determined that there could be a mistrial declared under the circumstances involved, as above stated, there comes the question as to whether such mistrial could be declared or the jury discharged in the absence of the relator. Section 356 of the Code of Criminal Procedure provides that a defendant must be present during his trial for a felony. The relator urges that the declaration of a mistrial and the discharge of the jury were parts of the trial and could not be made except in the presence of the defendant relator, and that as such declaration, mistrial and the discharge of the jury did not take place in the presence of the defendant relator, she stands, by reason of such facts, acquitted. The court cannot agree with these conclusions advanced on behalf of the defendant relator. Assuming that the defendant relator had absconded, and, for that reason, it became necessary to declare a mistrial, or presuming that she became so ill that apparently it would be weeks before she could appear in court again, then to

pursue the arguments advanced on behalf of the defendant relator to their logical conclusion, it would be necessary to keep the jury intact until her return from her voluntary absence or her recovery from her illness. The court is of the opinion that this is not necessary, because the court feels that the declaration of a mistrial and the discharge of the jury were not parts of a trial for the felony, and, therefore, it is not necessary that the defendant be present at the time of the declaration of mistrial or at the time of the discharge of the jury, so long as her own fault or her own dire illness required such mistrial and consequent discharge of the jury. A case directly in point is *Fails* v. *State* (*supra*), passed on by the Supreme Court of the State of Florida, and with facts almost exactly similar to those involved in this proceeding; the language of the Constitution of the State of Florida in reference to double jeopardy being exactly the same as the language of the Constitution of this State on the same provision; and also in point is the case of *Elizabeth Meadow* ([1750] Foster's Crown Cases, 76).

There remains now the question of the validity and effect of the plea taken in the hospital. If this were a legal plea, it would be a bar to a second trial and would result in sentence, but the court is at present inclined to be of the opinion that the session held at the Buffalo City Hospital was not a legal session of the court and that, therefore, the plea was not legally taken. It has been held that the County Court may hold sessions for business not requiring the presence of juries at places other than the places fixed for jury trial (*People ex rel. Woodin* v. *Ottaway*, 129 Misc. 120; affd., 222 App. Div. 711; affd., 247 N. Y. 493), but apparently such other places must be formally designated as places at which court terms will be held, and the designations of such other places filed in the office of the county clerk. (Judiciary Law, §§ 191, 192*; *Northrup* v. *People*, 37 N. Y. 203; *People* v. *Nugent*, 57 App. Div. 542.)

No formal designation, naming the Buffalo City Hospital as a place in which a term of court would be held had been made by the court. Even though it were legal to hold the session at the hospital and to take a plea there, such plea still stands on the record, and if such plea still stands, then the relator is legally in the custody of the respondent awaiting sentence on such plea. It is true that the record of the County Court shows that the court said that the original plea of not guilty would stand, but at no place in the record does it show that the County Court set aside the plea taken at the hospital. Even though the plea taken at the hospital were legally taken, and even though the County Court had endeavored to set aside such plea, this court can find no authority permitting

---

* Amd. by Laws of 1923, chap. 446.— [REP.

the County Court, on its own motion and without the consent of a defendant, to set aside a plea of guilty.

In view of the foregoing conclusions, this court is of the opinion that the relator is legally in the custody of the respondent, and that this proceeding should be dismissed.