13285

STATE v. RECTOR ET AL.

(164 S. E., 865)

*Messrs. Cole L. Blease, J. F. Eppes, P. C. Cothran, M. L. Smith, D. W. Smoak* and *L. D. Lanford,* for appellants,

*Messrs. J. G. Leatherwood* and *C. G. Wyche,* for respondent.

December 2, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

About midnight on June 11, 1927, Captain Sam D. Willis, sheriff of Greenville County, was shot and killed in front of his garage at his home in the City of Greenville. The killing, as disclosed by the facts, was brutal and cold-blooded. Subsequent investigations, which resulted in the trial of two persons, who, however, were acquitted finally, led to the arrest of a negro by the name of Blair Rook, who confessed that he went to the home of the sheriff at a late hour on the night named and concealed himself between a wire fence and the garage in the back yard, where he lay in wait until the deceased drove his car into the yard and got out, and that he then and there shot him to death without a word. In his confession, he stated that he was employed, for a monetary consideration, by Carlos A. Rector and J. Harmon Moore to do the killing. Moore was thereupon indicted for the murder, and was put on trial at the January, 1930, term of the Court of General Sessions for Greenville County, the Honorable W. H. Townsend presiding. During the trial, the Court was advised by the solicitor of certain alleged misconduct of one of the jurors drawn and impaneled to try the case, and, after an investigation of the matter, a mistrial was ordered. Later, the defendant Rector was also arrested, on the statement of the negro Rook, that Rector and Moore had employed him to murder the sheriff. The indictment against Moore was then *nol. prossed,* and thereafter, numerous moves and counter moves having been made in Court by the State and the defense, resulting in an appeal to this Court (158 S. C., 212, 155 S. E., 385), a true bill was returned on a new indictment, against Rook, Rector and Moore, and it was upon this indictment that the defendants Rector and Moore were arraigned and tried at the

December, 1930, term of Court, the Honorable E. C. Dennis presiding. The defendant Rook was not put on trial, but was used by the State as a witness. The indictment contained three counts: In the first count, all three of the defendants were charged, as principals, with the murder of Willis; in the second, Rook was charged with the murder, and Rector and Moore as being *accessories before the fact;* in the third, Rook was charged with the murder, and Rector and Moore as being *accessories after the fact.* The jury returned a verdict in the following form: "We find the defendants, Carlos A. Rector and J. Harmon Moore, guilty on the third count as per manslaughter." The Court, after refusing a motion in arrest of judgment, sentenced each of the defendants to imprisonment for a period of ten years; they appeal to this Court on assignments of error which we will now consider.

When the case was called for trial, a plea of former jeopardy was interposed by his counsel on behalf of the defendant Moore, the facts on which the plea rested being, substantially, as follows: In January, 1930, Moore, who was charged with the murder of Willis, was arraigned and put on trial. After several witnesses had testified on behalf of the State, the Court ordered a recess from Friday until the following Monday, allowing the jurors, in the interim, to go to their homes, but specifically instructing them not to talk with any one or to allow any one to talk with them about the case. When Court reconvened on Monday morning, January 20, the solicitor called to its attention certain affidavits which he had obtained during the recess and which alleged that one of the jurors named Babb had violated the instructions of the Court, in that he had stated, in substance, after the Court had recessed, in the presence of several persons in a café in the city, that he believed that the persons who had murdered Sheriff Willis had already been tried and acquitted, and that, so far as he was concerned, he would never convict a white man on a negro's testimony. Babb was then brought before the trial Judge, and examined in open

Court by him. The persons who had made the affidavits were also examined, and testified in substance as to the facts stated therein. The other jurors, who had been allowed to retire during these proceedings, were then brought in, and the Court ordered a mistrial, holding that a sufficient legal necessity, under the facts shown, had arisen for his doing so. The defendant Moore did not consent thereto, but reserved to himself all the rights that he might have in the premises. The Court thereafter held Babb to be in contempt of Court and committed him to jail, which action on its part was afterwards affirmed by this Court on appeal.

Judge Dennis, with the proceedings in the former trial with reference to this matter before him, overruled the plea of former jeopardy, holding that Judge Townsend had properly ordered a mistrial. The appellant Moore now excepts to this holding of Judge Dennis, on the ground that the mistrial was ordered by Judge Townsend without sufficient legal necessity therefor, and that, having been put in jeopardy on his first trial, he could not be tried again for the same offense.

We do not deem it necessary to go into an examination of the decisions in other jurisdictions with regard to this question; it has been adjudicated by our own decisions. We may say, however, that it is generally held that the presiding Judge has the power in his discretion to order a mistrial when there appears to him a manifest necessity for such action. In the recent case of *State v. Bilton,* 156 S. C., 324, 153 S. E., 269, 276, a similar question was presented. This Court in a very able opinion by Chief Justice Blease, had this to say:

"The decisions of the Courts of other jurisdictions, and some from the appellate Courts of this State, cited in support of it, have resulted in the statement that the proper general rule is this: 'The American cases hold generally that there must be a *manifest necessity* for the discharge of the jury *and leave the Courts to determine in their discretion*

*whether under all the circumstances of each case such necessity exists.* When such necessity exists, a plea of former jeopardy will not prevail on a subsequent trial. *But if the jury are discharged without defendant's consent for a reason legally insufficient and without an absolute necessity for it,* the discharge is equivalent to an acquittal, and may be pleaded as a bar to a subsequent indictment." (Italics added.) 16 C. J., 250.

"The principles announced in the quoted language are very much in harmony with the expressions of some of our wise jurists delivered in recent cases, after our Courts began to break away from the rigidness of the common-law doctrines. In *State v. Briggs,* 27 S. C., 85, 2 S. E., 854, 856, where the peculiar provisions of the Constitution of 1868 were under consideration, Mr. Justice McGowan, speaking of the 'necessity' under which a mistrial might be declared, said the circumstances thereabout must be *extraordinary.* Chief Justice McIver, in *State v. Richardson,* 47 S. C., 166, 25 S. E., 220, 35 L. R. A., 238, considering the provisions of both the Constitution of 1868 and those of the Constitution of 1895, referred, with approval, to the former expression of Justice McGowan. Mr. Justice Jones, in *State v. Stephenson, supra* [54 S. C., 234, 32 S. E., 305], quoted, with approval, language of the Supreme Court of the United States, that 'authority to discharge a jury from giving any verdict' was limited to circumstances showing that 'there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.' [*Thompson v. U. S.,* 155 U. S., 271, 15 S. Ct., 73, 39 L. Ed., 146.] Mr. Justice Hydrick, in speaking of the right of a trial Judge to order a mistrial, under certain circumstances, indicated that a party, discovering that a disqualified juror had been drawn or impaneled, should promptly bring the matter to the attention of the Court, and he said. 'The purpose of the law is to secure a fair and impartial jury for the trial of every case.' *State v. Wells,* 114 S. C., 151, 103 S. E., 515, 516."

The affidavits presented to Judge Townsend and the testimony of the juror Babb taken in open Court are made a part of the record in the case at bar. Our examination of these affidavits and of the testimony taken convinces us that there was a manifest necessity for the action taken by Judge Townsend in ordering a mistrial. Not only was there no abuse of discretion on his part, but, under the facts disclosed, no other course was open to him. It was clearly established that the juror Babb had stated, in effect, that he intended to stand for an acquittal of the defendant Moore regardless of the testimony of the confessed murderer, the negro Rook, that Moore had employed him to do the killing, for no other reason than that Rook was a negro and Moore a white man. This disqualified him to sit as a juror in the case to decide the issue between the State and the defendant on the sworn evidence. Judge Dennis was therefore correct in overruling the plea of former jeopardy.

A motion was also made, on behalf of both defendants, to quash the indictment upon the ground that it was found by an illegal grand jury. The trial Judge overruled the motion, and the appellants except and impute error.

The identical question here presented, arising out of the same facts, was before this Court in *State v. Wells,* a case recently brought here on appeal from Greenville County. The opinion in that case, written by Chief Justice Blease, was filed October 16, 1931, 162 S. C., 509, 161 S. E., 177. The Court, in its exhaustive consideration of the question, held adversely to the contentions of the present appellants, and under the authority of that case this assignment of error is overruled.

The appellants also make complaint that the Court erred in allowing the State more than five peremptory challenges to the jurors presented; the specification of error being that "on the proven date of the alleged homicide, the rights of the defendants as to their trial were irrevocably fixed." At the time of the killing, the statutory

law in force provided that any person or persons arraigned for murder, or certain other crimes named in the Act, should be entitled to peremptory challenges not exceeding ten; and the State in such case to not exceeding five. 35 Stat. at Large, 180. At the time of the trial of the appellants, the statute had been amended so as to give to the State, "where there is more than one defendant jointly tried" in cases of felonies, ten peremptory challenges, and to the defendants not more than twenty (35 Stat. at Large, 1161).

The granting or withholding of peremptory challenges being entirely a matter of procedure (16 R. C. L., 244; note to Ann. Cas., 1912-B, 811), the Legislature may change the law at any time, and the law in force at the time of the trial would govern, although passed subsequently to the alleged commission of the crime.

The general rule is thus stated in 35 C. J., 411: "The statute in force at the date of the trial and not that in force at the time of the commission of the offense governs the number of challenges, notwithstanding the amendatory Act takes effect after the prosecution is begun." See, also, cases cited in footnotes 34 and 35 on same page.

In this connection, it is also uniformly held that a law decreeing the number of peremptory challenges "to which accused persons are entitled is not *ex post facto* as to one who is on trial for a crime committed before the passage of the Act; and on the same principle it has been held also that a subsequent Act increasing the number of the State's peremptory challenges is not *ex post facto*." 16 R. C. L., 244. See, also, *Harris v. United States*, 4 Okl. Cr., 317, 111 P., 982, 31 L. R. A. (N. S.), 820, Ann. Cas., 1912-B, 810.

The trial Judge was therefore correct in his holding.

By their fourth exception, the appellants charge that the Court erred "in allowing the jury to view the place of the homicide after the arguments of the defense had been made, without the consent of either the de-

fendants or their counsel," the specification of error being, "that no record of the instructions given said jury were in the transcript, and the said jury were accompanied by two bailiffs and the sheriff of Greenville County, C. R. Bramlett, one of the witnesses for the State in said prosecution, and then and there received evidence in the absence of the Court, the defendants and the counsel."

The question whether the trial Judge may permit, in his discretion, the jury to view the place of the commission of the crime, is fully discussed by the late Chief Justice Gary in the case of *State v. Suber,* 89 S. C., 100, 71 S. E., 466, 467. The Court in that case said:

"Section 2950 of the Code of Laws of 1902, provides that 'the jury in any case may, at the request of either party, be taken to view the place or premises in question, or any property, matter, or thing pertaining to the controversy between the parties, when it appears to the Court, that such view is necessary to a just decision,' etc.

"Section 18, Art. 1, of the Constitution, is as follows: 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury, and to be fully informed, of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to be fully heard in his defense, by himself or by his counsel or by both.'

"The presiding Judge had the discretionary power, not only under the statute, but at common law, to order the jury to view the premises.

" 'The Court in its discretion may authorize the jury, properly attended, to go and examine—that is, view—the place of the offense, as a help to understanding the evidence. It was formerly supposed that, in a criminal case, this could be only by mutual consent. But the modern practice leaves it wholly within the discretion of the Court. It may be at any appropriate state of the trial; in one case, the jury asked

it after the Judge had summed up the evidence, and it was granted. It is the defendant's right to be present if evidence is given, perhaps at all events; but he may waive this right, either expressly or by the implication of declining, or even not asking to go. The Court, in granting or refusing the view, will be governed mainly by the special circumstances; and in granting it, will take the proper steps, for the care of the jury.' 1 Bishop's New Criminal Procedure, 965. * * *

"The principles we deduce from the authorities are (1) that in a constitutional sense, the viewing of the premises by the jury is not the taking of testimony; (2) that the prisoner is not thereby deprived of the right to confront or cross-examine any witness in the case; and (3) that it cannot reasonably be supposed that the prisoner's rights would in any respect be prejudiced by the absence of the Judge, if the jury merely inspected the locality. Of course, if the orders of the presiding Judge are disobeyed to the prejudice of the defendant, the Court would take such steps as would be deemed necessary to protect his rights."

See also *State v. Collins,* 125 S. C., 267, 118 S. E., 423.

It does not appear, from an examination of the record in the case at bar, that the jury did more than merely view the place of the alleged homicide. The affidavits of the bailiffs in charge of the jury are to the effect that no evidence was taken by them at the scene, and that no one pointed out anything to them or any one of them. Furthermore, contrary to the contention of the appellants, that the Court permitted the jury to view the place of the homicide without their consent or that of their counsel, the trial Judge, in an "order fixing case for appeal on question of jury," states that, when the jury requested that they be allowed to view the scene of the killing, he asked counsel both for the State and for the defense if there was any objection, and "was informed in open Court by counsel for both sides that there was no objection." Under these circumstances, it appears that this ground of appellants' complaint is without merit.

With regard to the further contention that the Court erred in allowing Sheriff Bramlett, who was a witness for the State, to accompany the jury to the place of the homicide, the record shows that the jury was in the custody, not of the sheriff, but of two bailiffs; the sheriff providing the jury transportation, at the direction of the Court. But even if they were in his custody, this would not be ground for a new trial in the absence of a showing that the appellants were prejudiced thereby. The practice, however, of placing a trial jury in the custody of one who is a witness in the case has been condemned, and properly so, by this Court. *State v. Mitchum,* 150 S. C., 341, 148 S. E., 184; *State v. Douglas,* 115 S. C., 483, 101 S. E., 648, 649, 8 A. L. R., 656. And we approve here what was said in the *Douglas case:* "In the trial of a cause involving human life or any other felony the trial should be conducted in a manner free from wrongdoing, or even a suspicion of wrongdoing. This general rule should prevail."

In our examination of the transcript of record, we observe that, at the time the jury were viewing the place of the homicide, the bailiffs permitted a photograph to be made of them for newspaper purposes. This was not proper, and doubtless, if the matter had been called to the attention of the trial Judge, he would have taken appropriate action. However, as it is not made to appear that the appellants were prejudiced by this act, it is not sufficient ground for a reversal of the judgment.

By Exceptions 5 and 6, the appellants allege that the Court erred in his charge as to the law of manslaughter, the specifications of error being: "(1) His Honor had just told the jury that he would charge manslaughter. He then referred to the statute law fixing the punishment for accessory before the fact as being the same as the punishment for murder, thus overemphasizing the enormity of the crime of manslaughter as there can be no accessory before the fact of manslaughter. (2) He unduly

emphasized the law of manslaughter by charging the jury that an accessory after the fact of manslaughter could not be punished greater·than for manslaughter."

It is to be noted that the error complained of in the first specification is that the Court overemphasized the enormity of the crime of manslaughter, by his arrangement of the language used. We have carefully read the entire charge, and, while there may be some portions of it not quite as clear as might be desired, we do not think, when it is considered as a whole, that the jury misunderstood or were misled by the instructions given. The Court, in the outset, took from the consideration of the jury the first count in the indictment, which charged all three of the defendants with murder, submitting for their consideration the second and third counts only; the second charging the appellants with being accessories before the fact, and the third with being accessories after the fact. He then instructed the jury as to the law of murder and manslaughter, defining each. He also charged a number of requests submitted by the State, as well as twelve submitted by the defense; these requests covering practically all the law applicable to the offenses for which the appellants were being tried. Continuing his charge, he told the jury what punishment was fixed by statute in case a person was convicted of murder, of murder with recommendation to mercy, or of manslaughter. With regard to the second count, he told them that a person charged with being an accessory before the fact, if convicted on such charge, would receive the same punishment as the principal felon; that there could be no conviction of accessory before the fact to the crime of manslaughter, but only to the crime of murder, and went carefully into the matter of the different verdicts that might be found as to one or both of the defendants in the present case, and what the punishment would be in each instance, if they should be found guilty. He then charged: "You will notice, you will recall that I started to charge you about manslaughter and

then told you that you had nothing to do with manslaughter; there can be no accessory before the fact of manslaughter. Manslaughter is the killing of a human being in sudden heat and passion upon sufficient legal provocation and without malice. Therefore, you readily understand that where a person had gone and counselled or advised or induced one to kill another that it could not be in sudden heat and passion; however, there is a difference between an accessory before the fact and an accessory after the fact; there may be an accessory after the fact of manslaughter. In the third count of this indictment the charge is that these two men are accessories after the fact. Now, in the law I read to you the Code, our statute law, fixes that the punishment for accessory before the fact is the same as punishment for murder; it does not provide that the punishment for accessory after the fact is the same as murder; that is to say, a person convicted of being an accessory after the fact of murder the sentence would not be the same as if convicted of murder, but the sentence would be not exceeding ten years and not less than three months. An accessory after the fact of manslaughter, referred to the statute law fixing the punishment murder."

It seems that the foregoing quotation is that part of the charge about which appellants especially complain. We do not think, however, that this language, even when considered alone, can fairly be objected to on the ground that it "overemphasized" the crime of manslaughter. Certainly, that the Court, after stating he would charge as to manslaughter the punishment could not be greater than for of one convicted as an accessory before the fact as the same as that of one convicted of murder, cannot reasonably be regarded, in the light of the whole charge, as an overemphasis of the enormity of the crime of manslaughter. Such conclusion can be reached only, if at all, by a refinement of logic that does not appeal to this Court. On the whole, we think that the meaning of the language used by the Court,

when all that was said is properly considered, was sufficiently clear to be correctly understood by the jury, if we assume, as we must, that the jury was composed of men of sound common sense and of average intelligence and understanding.

With regard to the second specification of error, what we have already said applies. Furthermore, we do not find, from an examination of the charge, that the Court instructed the jury as here complained of. But even if he had done so, we are at a loss to understand how it could have prejudiced the appellants by unduly emphasizing the law of manslaughter, in view of the fact that the Court clearly and correctly charged that if the appellants were convicted on the third count, that is, of being accessories after the fact, which could be to either murder or manslaughter, the punishment would be not less than three months nor more than ten years.

But if it should be thought that any portion of the charge was an overemphasis of the crime of manslaughter, or placed undue emphasis on the law of manslaughter, it is clear, for other reasons, that no harm was done the appellants. It is evident from the attitude of the jury, during their consideration of the case, in coming into Court and inquiring whether they could convict the appellants of a crime that would carry a sentence of less than life servitude, that they desired and were seeking to render a verdict carrying the least penalty possible. Furthermore, if Rook, the principal felon and confessed assassin, had been on trial, and the Court had failed or refused to charge the law of manslaughter, there would have been no error; but if he had charged the law of manslaughter and Rook had been found guilty of such crime, he could not have complained of such charge, even though error, as it would have been more favorable to him than he would have been entitled to under the evidence. So, with regard to the appellants here, if the crime of manslaughter was unduly emphasized, as they contend, they should not be heard to com-

plain for the reason that, even if there was error in the instructions of the Court, the jury returned a verdict which, in view of the inquiry they had made, was in the nature of a request to the Court to make the punishment, manslaughter being a lesser crime than murder, as light as possible, which, in his discretion, he had the power to do.

The appellants, by Exception 7, complain that the trial Judge erred in instructing the jury as to the crime of which they could convict the defendants; the specification of error being that the Court "unnecessarily jumbled" its instructions as to the form of the verdict, and "confused the jury by a commixing of the several grades of punishment applicable to the first count in the indictment," in its use of the following language: "If you should conclude from the evidence that the killing has been shown to be manslaughter rather than murder, there could be no accessory before the fact of manslaughter, but if you conclude that the killing, whether you conclude it was murder or manslaughter there can be accessory after the fact and a verdict of guilty on the third count, a verdict on the second count would mean that the murder had been committed and that the defendants were accessories before the fact; they would then be punished as if they had committed the murder. A verdict of guilty generally would mean the same thing. As I told you in my charge a verdict of guilty on the second count would be taken to mean not guilty on the third, or a verdict of guilty of the third count would be taken to mean not guilty on the second count. Now, your verdict, as I say, on the first count would mean that the punishment, a verdict of guilty on the first count would mean the same as the punishment as if guilty of murder and a verdict of guilty on the third count, because we are not dealing with the first and when I told you just now about the first count I mean the first of the two you are considering; a verdict of guilty on the third count the punishment would be from three months to ten years, and where

I used the first count just now you can take that to mean the second, I am talking about the first of the two that you are to consider."

What we have already said in disposing of Exceptions 5 and 6 applies here. As we have stated, the charge of the Court, in determining whether there is error, must be considered as a whole. But we do not think, from a consideration of that portion alone of the charge complained of, that there was any such prejudicial "commixing of the several grades of punishment applicable to the first count" as contended by the appellants. It was a part of the instructions given by the Court after the jury had been considering the case for some time, in response to their inquiry whether a verdict could be rendered that would carry a punishment, under the law, less than life servitude. The jury evidently knew what they wanted to do, and did it; and the fact that they did find such a verdict, under the instructions of the Court, is convincing that the charge was in no way confusing or misleading.

By Exception 8, the appellants submit that the Court erred in refusing to grant their motion in arrest of judgment "on account of the invalidity of the verdict." The specification of error is that, as the third count charged the defendants with being accessories after the fact of murder or after the fact of manslaughter, there could be no conviction of the "main substantive crime of manslaughter upon a charge of accessory."

It seems to be the contention of the appellants here that the verdict, "We find the defendants, Carlos A. Rector and J. Harmon Moore, guilty on the third count as per manslaughter," was a conviction of the *crime of manslaughter,* and that such verdict cannot stand upon the charge of being accessories after the fact. If the verdict was as contended, it is invalid and must fall. But we do not think it may be so construed. The jury had been told that they might find the defendants, or either of them, guilty on the third

count, which charged them with being accessories after the fact; and that one so charged may be found guilty of being an accessory after the fact to murder or to manslaughter; and that in either particular the punishment would be the same; not less than three months nor more than ten years. There can be no question, as it is undoubtedly true, that this was made clear to the jury, and that they understood it, as it was given in response as an answer to the inquiry that they had made with regard to punishment. While it must be conceded that the term "per" is generally rendered "for" or "by," there can be no doubt that as used in the verdict of the jury in this case, under the instructions given them by the Court in response to their inquiry, as we have already pointed out, it simply means that they found the defendants guilty as being accessories after the fact of or to manslaughter. Under the circumstances which we have detailed, there can be no other reasonable construction of the verdict.

The appellants also complain, by Exception 9, of the Court's failure to grant their motion in arrest of judgment; the specification of error being: "It being respectfully submitted that the jury by its verdict acquitted the defendants on the first and second counts in the indictment. The conviction on the third count, which would carry a conviction for manslaughter after the fact, only meant that the jury disbelieved any testimony tending to convict of accessory after the fact, because their verdict shows that they did not believe the defendants were accessories after the fact, for they convicted them of the substantive crime of manslaughter."

We do not agree with this contention. What we have said with reference to Exception 8 applies here and really disposes of this objection. In addition, however, we may say that it is clear that the jury, after the final charge of the Court made in response to their inquiry, considered only the third count of the indictment. It is evident from their ver-

dict that they did not believe that the testimony was sufficient to convict on the second count; the first count had been withdrawn from them by the Court. It is clear, therefore, that if they had reached the conclusion that the evidence was not sufficient to convict on the third count they would have rendered a general verdict of acquittal; and if they believed, as indicated by their verdict, that the defendants were guilty on the third count alone, it would necessarily be, under the charge of the Court, as accessories after the fact, either to murder or to manslaughter; the punishment for which, in either case, would be less than life servitude. We do not think that a proper construction of the verdict, in the light of attendant circumstances, gives to it the legal effect contended for; the acquittal of the defendants.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.