[No. 35635. Department One. May 10, 1962.]

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY CONNORS, *Appellant.*\*

\*Reported in 371 P. (2d) 541.

*Irving C. Paul, Jr.,* for appellant.

*Charles O. Carroll* and *James A. Alfieri,* for respondent.

HILL, J.—The issue in this case is whether there was any necessity for the trial judge, in Department No. 18 of the Superior Court for King County, to declare a mistrial over the objection of the defendant. If there were such necessity, the defendant's conviction, on a subsequent trial in Department No. 4 of the Superior Court for King County, can be affirmed[1]; if not, his plea of double jeopardy, on the subsequent trial, should have been sustained and the charge against him dismissed.

On the morning of May 2, 1960, Timothy Connors went to trial in Department No. 18 of the Superior Court for King County on a charge of robbery. After the jury had been impaneled and sworn to try the cause, but before counsel had made their opening statements, the trial judge said:

"It is fairly close to the noon hour. I think we will shortly take a recess until 1:30 but I want to give you a caution which I will remind you of at times throughout the trial and which you doubtless have heard before.

"You will not permit anyone to talk with you about this case during its trial and you will not talk with anyone about the case. You will not form any conclusion or reach any decision about the matter on trial until you have heard all of the evidence, have been instructed by me as to the law applicable to the case and have retired to the jury room to consider of your verdict. Please remember that at all times.

"You will be excused until 1:30."

The defendant had not consented to any separation of the jury during the trial, and it was the understanding of the court and counsel that they were to be kept together. Some, at least, of the jury did not so understand it, and four had gone their way when the separation was discovered. The

---

[1] In addition to the claim of double jeopardy, two other claims of error were made; we deem them to be without merit and any discussion of them would be *obiter dictum* in view of our disposition of this case.

following colloquy, between the court and counsel, then ensued:

"THE COURT: They probably misunderstood what I said. I didn't mean to excuse them. I meant to declare a recess until 1:30. I wanted to hear some argument. MR. Mc-GOUGH [deputy prosecuting attorney]: I am not sure if it is permissible to separate them before the trial actually starts or not. THE COURT: Mr. Paul, do you raise any exception at this time to what happened inadvertently? MR. PAUL [defense counsel]: I am thinking, your Honor. Well, since there has been no opening statement and no discussion of the case, I would be willing to let the rest of the jurors separate until 1:30 with the understanding that I haven't prejudiced my right to insist that they be kept together thereafter. THE COURT: Surely. I understood that from the start and I will not excuse the others now unless you say you are willing. MR. PAUL: I think what is sauce for the goose should be sauce for the gander. I think the others could go as well. THE COURT: All right, it is understood that these eight may go out now and have lunch and separate, in other words, but, upon their return, upon the entire jury's returning, they won't be separated again until the conclusion of the trial. Is that agreeable? MR. PAUL: That is fine. MR. McGOUGH: It is fine with us, your Honor."

When the court reconvened at 1:30 p. m., the following colloquy occurred:

"THE COURT: Gentlemen, due to what happened this morning, the Court is going to grant, on its own motion, a mistrial in this case. You are asked to report to the Presiding Judge and he will immediately assign you to another department where you will select another jury. Please report to him at once. MR. PAUL: If your Honor please, the defendant in this case has not moved for a mistrial. THE COURT: I realize that, Mr. Paul, but the Court has a duty to do what he thinks best in his discretion in order to leave no question in the record as to a fair trial and I have considered the matter and that is my determination. So the case is now reassigned to the Presiding Judge and you and your opponent will report there and he will immediately assign it to another judge, another department, so you may select another jury. MR. PAUL: Your Honor, may I address the Court? THE COURT: Yes. MR. PAUL: In regard to this case of State v. Connor, I was taken aback by your Honor's ruling and I would like, for the record, to take exception to the

granting of a mistrial and state that it has been over the objections of the defendant."

The case was reassigned, that same afternoon, to Department No. 4 of the Superior Court for King County for trial. A plea of former jeopardy was seasonably interposed and denied. The jury selected in that department found the defendant guilty of robbery, and, from the judgment and sentence which followed, the defendant appeals.

We shall concern ourselves only with his contention: That when the first jury was impaneled and sworn to try the charge against him, he was in jeopardy; and that when that jury was discharged, without his consent and over his objection, that he should not be tried again because a subsequent trial for the same offense would constitute double jeopardy and be a violation of Art. I, § 9, of our state constitution: "No person shall . . . be twice put in jeopardy for the same offense."[2]

In *State v. Brunn* (1945), 22 Wn. (2d) 120, 154 P. (2d) 826, 157 A. L. R. 1049, and, more recently, in *State v. Stacy* (1953), 43 Wn. (2d) 358, 261 P. (2d) 400, we discussed at considerable length what constitutes being "twice put in jeopardy for the same offense." It is unnecessary to repeat that discussion, but it should be read as background[3] to our present holding.

■ While counsel, and many cases, consider the problem before us in terms of "double jeopardy," we are not at all convinced that "jeopardy" is something that attaches at a particular moment in a trial; and that, having once attached, it can be disattached for some reasons and not for others. (See discussion in *State v. Brunn, supra.*) We prefer to consider the problem from the standpoint of the right of a defendant to have his case determined by the

---

[2] The counterpart of this provision is found in the United States Constitution, Fifth Amendment, which provides that a person shall not "be twice put in jeopardy of life or limb" for the same offense.

[3] For another excellent historical statement see Judge Holtzoff's opinion in *United States v. Whitlow* (D.D.C. 1953), 110 F. Supp. 871. (The result of that opinion is open to criticism—67 Harv. L. Rev. 346.)

See discussions re *Whitlow* in: 44 J. Crim. L. 468; 28 N. Y. U. L. Rev. 1324; and 7 Okla. L. Rev. 94.

jury which he has accepted and which has been impaneled and sworn to try his case.

■ A somewhat extended search satisfies us that the great weight of authority now supports the proposition that where, as in this case, a jury has been impaneled and sworn to try the cause, the defendant has the right to have his case determined by that jury; and a discharge of that jury, without his consent, has the same affect as an acquittal, unless such discharge was necessary[4] in the interest of the proper administration of public justice. In short, the defendant's valued right to have his trial completed by a particular jury may, on proper occasions, be subordinated to the public's interests in fair trials designed to end in just judgments. *Wade v. Hunter* (1949), 336 U. S. 684, 93 L. Ed. 974, 69 S. Ct. 834.

Such general statements are usually followed by examples of what facts constitute a necessity or emergency justifying a discharge of a jury over the objection of the defendant. The necessity most frequently arising is a hung jury, and it is universally recognized that a jury which, after a reasonable time, cannot arrive at a verdict, may be discharged and the defendant tried again. Even so, a too quick discharge of a hung jury would be held a violation of the defendant's right to a verdict of that jury; and in *Davis v. State* (1942), 144 Tex. Crim. 474, 164 S. W. (2d) 686, it was held that the discharge of a jury, after deliberating only an hour and a half, supported a claim of double jeopardy on a retrial. Necessity or emergency rises from various causes: illness, disability or death of a juror, judge or counsel; misconduct of a juror or prosecutor; or discovery of a juror's bias. *State v. Critelli* (1946), 237 Iowa 1271, 24 N. W. (2d) 113.

Judge Black, in the *Wade v. Hunter* case, *supra*, points out some of the situations that would present a necessity

---

[4]Referred to by Mr. Justice Story in *United States v. Perez* (1824), 22 U. S. 256 (9 Wheaton 579), as a "manifest necessity"; and in more recent times by Judge Wilbur in *Cornero v. United States* (C.C.A. 9th 1931), 48 F. (2d) 69, 74 A. L. R. 797, as a "most urgent necessity."

for the discharge of a jury without the consent of the defendant (p. 688):

" . . . The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently · would be frustrated by denying courts power to put the defendant to trial again. And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial. . . ."

Other cases, texts, and law review articles which deal with the character of the necessity which will justify a termination of the trial before a particular jury without the defendant's consent, and still leave him subject to again being put to trial for the same offense, are listed in note 5 which, because of its length, will appear at the end of this opinion.

Our specific problem is whether, under the circumstances of the jury's separation, as shown by the record, there existed any necessity for the mistrial which the trial court granted on its own motion.

All parties had agreed to the separation of the jury during the noon hour. There is not the slightest indication that either the state or the defendant was prejudiced by the separation which had occurred. The case of *State v. Shuck* (1905), 38 Wash. 270, 80 Pac. 444, is squarely in point on the proposition that where the defendant consents to proceed with a trial after knowledge of a separation of the jury, he can not secure a new trial because of the separation. There was no necessity for the trial court to deprive the

defendant of his right to be tried by the jury which had been selected to try his case. He had the right to decide whether his interests would be better protected by having a new trial or by proceeding with the jury then selected to try his case. The mistrial on the trial court's own motion, over the objection of the defendant, deprived him of that right and must be given the same effect as an acquittal. It follows that the trial court's refusal to sustain the plea of former jeopardy (interposed on the second trial) was error. (Whether it was "former jeopardy" or not, it raised the issue with which we are concerned, *i.e.*, the right to be tried by the jury selected and sworn to try the cause.)

As a further indication that the separation of a jury is no longer fraught with cataclysmic consequences, it should be noted that this state, in company with many others, has recognized a distinction between a separation of the jury before and after a case has been submitted to the jury. In the latter situation, there is a presumption of prejudice and the burden is on the state to show that no prejudice did actually result; but, where the separation occurs before the case is submitted to the jury, there is no such presumption of prejudice, and the defendant claiming prejudice must show it. *State v. Creech* (1961), 57 Wn. (2d) 589, 358 P. (2d) 805; *State v. Amundsen* (1950), 37 Wn. (2d) 356, 223 P. (2d) 1067, 21 A. L. R. (2d) 1082. The defendant, here, disclaimed any prejudice and objected to the discharge of the jury.

It is regrettable that the action of declaring a mistrial, in consequence of a sincere desire by the trial court to avoid any possibility of error, should have to be the basis for the ultimate release of a defendant of whose guilt there can be but little doubt. However, his right to be tried by the jury first chosen and sworn to try his case is inviolable, except where necessary to discharge that jury in the interest of the proper administration of public justice, and no such necessity existed here.

The most recent decision of the Supreme Court of the United States, on the subject of double jeopardy, warrants

some discussion[6]. This five to four decision, handed down July 12, 1961, goes as far, or further, than any previous decision in upholding as proper (*i.e.*, necessary) the declaration of a mistrial *sua sponte*, by a trial judge, without the defendant's active and express consent. The reason for the mistrial was the allegedly improper conduct of the government attorney. On a retrial the defendant relied on a claim of former jeopardy, which was denied by the trial court, and, after conviction, he appealed.

The Second Circuit, sitting *"in banc,"* indicated that the trial judge, who granted the mistrial, displayed an "over-zealousness" and acted "too hastily"; but, nonetheless, affirmed the conviction on the second trial[7]. The majority of the Supreme Court considered that the mistrial had "been granted in the sole interest of the defendant," and said it did not desire to make trial judges

" . . . unduly hesitant conscientiously to exercise their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused."

It followed that since the mistrial had been granted in the interest of the defendant, it did not bar a retrial; and the conviction on the retrial was affirmed.

This opinion is a marked departure from the rule of strict necessity. The Supreme Court of California, on August 16, 1961, said (concerning the *Gori* case[8]):

"Our attention has been called to Gori v. United States, 81 S. Ct. 1523, wherein a bare majority of the United States Supreme Court held that the granting of a mistrial on the court's own motion without the defendant's consent, but for the defendant's benefit, does not as a matter of law place the defendant in jeopardy under the Fifth Amendment to the United States Constitution. This holding does not accord with the uniform construction placed by this court

---

[6] *Gori v. United States* (1961), 367 U. S. 364, 369, 6 L. Ed. (2d) 901, 81 S. Ct. 1523.

[7] *United States v. Gori* (1960), 282 F. (2d) 43 (criticized in 36 N. Y. U. L. Rev. 730 (1961)).

[8] *Cardenas v. Superior Court* (1961), 56 Cal. (2d) 273, 363 P. (2d) 889, 891.

upon the jeopardy provision of the California Constitution contained in article I, section 13. . . ."

The mistrial, around which the *Gori* case centers, was granted, as in the present case, *sua sponte* by the trial judge; but there it was without the defendant's "active and express consent," while in the present case it was over the defendant's express objection. There can be no assertion that the mistrial, which is the pivotal factor in this case, was granted in the interest of or for the protection of the defendant.

It is directed that the judgment of conviction, appealed from, be vacated and the robbery charge against the defendant dismissed.

WEAVER, ROSELLINI, and FOSTER, JJ., concur.

### ADDENDUM

Note 5:

*Recent cases in which situation did not justify termination of the trial:*

*McCabe v. Bronx County Court* (1960), 24 Misc. (2d) 477, 199 N. Y. S. (2d) 247 (misconduct of defense attorney); *People v. Colon* (1959), 18 Misc. (2d) 1061, 184 N. Y. S. (2d) 537 (trial was adjourned because of complaining witness' illness and upon day to which case was adjourned another trial was in progress; trial terminated on ground that it was for convenience of all concerned); *Jones v. State* (1959), 230 Ark. 18, 320 S. W. (2d) 645 (juror related to witness in criminal trial); *State v. Preto* (1958), 51 N. J. Super. 175, 144 A. (2d) 19 (juror was mother of client of defense counsel); *People v. Valenti* (1957), 49 Cal. (2d) 199, 316 P. (2d) 633 (illegality of arrest); *State ex rel. Williams v. Grayson* (1956) (Fla.), 90 So. (2d) 710 (after jury had retired to consider its verdict, prosecutor, out of fear of ultimate effect of error which might be in the record, requested and obtained discharge of the jury); *People ex rel. Epting v. Devoe* (1955), 309 N. Y. 818, 130 N. E. (2d) 616 (difficulty in obtaining stenographer); *Lillard v. Commonwealth* (1954) (Ky.), 267 S. W. (2d) 712 (misconduct of defense counsel); *Mougell v. State* (1953), 97 Okla. Crim. 180, 260 P. (2d) 447 (defendant admitted his guilt on the witness stand).

*Situations which did justify termination of trial:*

(a) Inability to agree on a verdict: *State v. Eisentrager* (1960) (Nev.), 357 P. (2d) 306; *Strickland v. State* (1960) (Tex.), 336 S. W. (2d) 185.

(b) Illness of juror, prosecuting attorney, defense attorney, or defendant: *Boisen v. United States* (1960), 181 F. Supp. 349; *United States v. Potash* (1941), 118 F. (2d) 54, cert. denied 313 U. S. 584, 85 L. Ed. 1540, 61 S. Ct. 1103; *State v. Critelli* (1946), 237 Iowa 1271, 24 N. W. (2d) 113; *State v. Beal* (1930), 199 N. C. 278, 154 S. E. 604; *State v. Kappen* (1921), 191 Iowa 19, 180 N. W. 307; *People ex rel. Jimerson v. Freiberg* (1930), 137 Misc. 314, 243 N. Y. S. 590.

(c) Juror's misconduct or bias: *Killilea v. United States* (1961), 287 F. (2d) 212; *Crawford v. United States* (1960), 285 F. (2d) 661; *In re Devlin* (1956), 139 Cal. App. (2d) 810, 294 P. (2d) 466; *People v. Bigge* (1941), 297 Mich. 58, 297 N. W. 70; *People v. Schepps* (1925), 231 Mich. 260, 203 N. W. 882; *State v. Rector* (1931), 166 S. C. 335, 164 S. E. 865; *Manning v. State* (1927), 155 Tenn. 266, 292 S. W. 451.

(d) Misconduct of judge: *People v. Thomas* (1959), 15 Ill. (2d) 344, 155 N. E. (2d) 16.

*Law Reviews* (articles):

16 B. U. L. Rev. 380 and 892 (1936), Dangel, Double Jeopardy in Massachusetts;

9 N. Y. U. Intra. L. Rev. 124 (1953), Boral, Double Jeopardy at Common Law;

35 Yale L. Jour. 674 (1926), Comley, Former Jeopardy.

*Comments and Notes*:

3 Brooklyn L. Rev. 242 (1934); 36 Calif. L. Rev. 431 (1948); 67 Harv. L. Rev. 346 (1953); 17 J. B. A. Kan. 352 (1949); 44 J. Crim. L. 468 (1953); 24 Minn. L. Rev. 522, 528 (1940); 32 N. C. L. Rev. 526 (1954); 36 N. Y. U. L. Rev. 730 (1961); 28 N. Y. U. L. Rev. 1324 (1953); 14 Notre Dame Law. 215 (1939); 7 Okla. L. Rev. 94 (1954); 2 U. C. L. A. L. Rev. 409 (1955); 14 U. Pitt. L. Rev. 583 (1953); 47 Va. L. Rev. 122 (1961).

*Texts*:

38 A. L. R. 706; 1 Bishop, Criminal Law (9th ed.), §§ 1030-1046; Dangel, Criminal Law, § 194; Grigsby, Criminal Law, § 223; Miller, Criminal Law, § 186(g); 1 Wharton, Criminal Law and Procedure, § 141.

FINLEY, C. J. (dissenting)—The crucial issue in this case in my judgment is not whether there was any "necessity" for the trial court to declare a mistrial in the original proceeding, but whether the trial court *abused its discretion* by concluding that the situation before it merited an order of mistrial. In other words, the issue, as phrased by the majority, is too narrow. It fails to recognize the possibility of an exercise of reasonable discretion in the matter by the trial court.

In the case of *State v. Kinghorn* (1909), 56 Wash. 131, 105 Pac. 234, a jury was impaneled and sworn and the prosecuting witness called to the stand. After preliminary questions were asked, the defendant moved to dismiss the case on the ground that he had not been properly arraigned. The motion was denied; the defendant was arraigned by order of the court, and a plea of *not guilty* was entered. On the motion of the state the jury was discharged with the defendant reserving an exception. A new jury was

impaneled and sworn. Thereupon, the defendant pleaded former jeopardy. The plea was denied, and the defendant was convicted. On appeal it was held that the defendant had been placed in jeopardy during the few moments he spent before the first jury, and for that reason the conviction was reversed and the charge dismissed. The discharge of the jury in the original action without consent of the defendant had the same effect as an acquittal.

The similarities to the instant case are obvious. The trial, for all practical purposes, had not proceeded beyond impaneling the jury and the discharge of the original jury was allowed over the resistance of the defendant. Although the opinion in *Kinghorn* did not use the word "necessity," the meaning or reasoning implicit in the term was applied as evidenced by this discussion from the case:

"We next inquire whether there was good cause for discharging the jury. Had anything then occurred or been omitted which would have rendered a judgment erroneous on a verdict of guilty? We think not. When the appellant had been arraigned and pleaded not guilty, an issue was joined and the trial should have proceeded. . . . In *State v. Straub,* 16 Wash. 111, 47 Pac. 227, we held that the failure to plead in a capital case could not be raised for the first time on appeal; that the omission was technical, and did not affect any substantial right of the accused. Applying the logic of that case to the case at bar, it will at once appear that, when the plea was entered, the irregularity was cured, and that the trial should have proceeded in an orderly way before the jury then impaneled."

The *Kinghorn* case is so strikingly similar to the instant case as to be controlling and authoritative for the majority's position herein, except for one difficulty. The *Kinghorn* case was overruled by *State v. Brunn* (1945), 22 Wn. (2d) 120, 154 P. (2d) 826, 157 A. L. R. 1049.

The historical basis of the right of a criminal defendant to have his case determined by the jury originally impaneled and sworn to try his case was recognized in *State v. Brunn, supra,* as follows:

"There was a period in England when many of the judges apparently considered it their judicial duty to obtain convictions in all criminal cases which came before them for

trial. To that end, if it appeared during trial that the jury was not likely to convict, it became the practice to discharge that jury and impanel another, and, in some cases, a third or fourth, if necessary. The tyranny and injustice of such a procedure are obvious, but many times more apparent when it is remembered that in those days there were upwards of two hundred statutory crimes punishable with death, and a decision in the trial court was absolutely final. The defendant had no appeal. The rule that a jury could not be discharged without the defendant's consent grew up as a counter weight to that pernicious practice."

It can be said realistically, that the double jeopardy rule was incorporated in our jurisprudence to meet a specific abuse of judicial authority which no longer persists. See *State v. Stacy* (1953), 43 Wn. (2d) 358, 261 P. (2d) 400.

The *Brunn* case emphasized that there must be a manifest necessity for the discharge of the jury originally impaneled to hear and try a cause, and that *the courts* are *to determine in their discretion* whether under all the circumstances of the case such necessity exists.

The reasoning of the *Brunn* case finds support in *Gori v. United States* (1961), 367 U. S. 364, 6 L. Ed. (2d) 901, 81 S. Ct. 1523,[9] the most recent United States Supreme Court decision dealing with the problem. It is said in the *Gori* case:

"Since 1824 it has been settled law in this Court that 'The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' *Wade v. Hunter*, 336 U. S. 684, 688. . . . [Citing cases.] Where, for reasons deemed compelling by the trial judge, who is

---

[9]The majority opinion distinguishes the *Gori* case on legalistic grounds. While the rule abstracted from that case by the majority may perhaps be accurate in a very strict, literal, legal sense, it severely restricts the reasoning and philosophy of the opinion. Since *Gori* relates to the question concerning the applicability of the fifth amendment to a situation which arose in the federal court system, it is, in any event, not binding precedent on this court and is of value only to the extent that its reasoning is persuasive. It is, in my opinion, inappropriate to distinguish the case on legalistic grounds and ignore the instructive reasoning it presents.

best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. . . . [Citing cases.]. It is also clear that 'This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served . . . .,' *Brock v. North Carolina,* 344 U. S. 424, 427, and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion . . . [Citing cases.]."

The result reached by the majority hearkens back to the discarded reasoning of the *Kinghorn* case. The reasoning of the majority is in terms of absolutes, whether there was or was not strict necessity, as the appellate court views the record. The majority's reasoning replaces the flexible workable rule inherent in the *Brunn* case; *i.e.,* whether the trial court in its discretion could reasonably conclude that a necessity of a mistrial existed. The trial court was in the best position to determine whether or not it was prejudicial to the defendant when the bailiff allowed the jurors to separate for lunch. This court should not brush aside the trial court's judgment that the situation merited an order of mistrial unless it is clearly shown that actual prejudice resulted from the court's order.

It seems to me that it should be readily apparent that the defendant was caused no disadvantage by the granting of the mistrial. In fact, the mistrial was beneficial to the defendant in the sense that any question as to whether he received a fair trial up to that point was removed. It would be nothing short of complete fabrication to contend that the original trial court acted because of a fear that the jury would acquit the defendant; consequently, this possibility needs no discussion beyond noting that an absence of this factor means that the historical reason for the rule that a jury cannot be discharged without the defendant's consent is not present in this case.

Realistically, the only thing lost to the defendant by

virtue of the mistrial order was the chance to gamble with a particular jury. In this connection, the following passages appearing in *State v. Stacy, supra,* are pertinent:

"While it seems obvious to us that the doctrine of double jeopardy in the past has been pushed to unwarranted extremes, most certainly we are not suggesting that it is entirely without merit or constitutional effect as a protection for criminal defendants. The principle is a sound one, but reasonableness must be the key word or thought in interpreting, defining, or applying the principle of double jeopardy. The desirability of finality in verdicts and judgments, the humanitarian ideas of fair play and justice for criminal defendants, and particularly, the applications of the doctrine by early American jurists, deriving from the harshness of early-day English criminal law, must not be overemphasized and little or no emphasis given to the desirability of protecting society through an effective, evenhanded, reasonable administration of criminal justice.

"Due process and fair play regarding criminal defendants do not require a criminal trial to be a game of chance with all of the odds heavily weighted in favor of the defendant. For several generations, leaders of the bench and the bar have sought to place the administration of justice upon a sounder basis as to the rights of both plaintiffs and defendants in civil as well as criminal trials. It seems fairly obvious that the ultimate in a criminal trial should be the ascertainment of the truth; that is, whether the accused is innocent and should be set free, or whether the accused is guilty and should be incarcerated for the protection of society. Again, it should not be a matter of luck or perhaps misadventure of one of the contestants during the course of a trial; nor should the outcome depend substantially upon the skill or luck of the attorney representing one side of the controversy."

On the basis of the *Brunn* case, the similar reasoning of the *Stacy* case and of the United States Supreme Court in *Gori,* I would hold that the ordering of a mistrial in the original criminal proceeding was within the discretionary power of the trial court. There has been no showing that the defendant was prejudiced or disadvantaged in any material way; hence, the trial court cannot be said to have abused its discretion.

Alternatively, accepting for the moment the majority's

version of the problem with its discounted emphasis of the trial court's discretion in the matter, it is my view that the "necessity" test, outlined by the majority, is met. As the majority opinion recognizes, "the defendant's valued right to have his trial completed by a particular jury may, on proper occasions, be subordinated to the public's interests in fair trials designed to end in just judgments." Since the trial court could not be absolutely certain that the record was free from reversible error, it was necessary from the standpoint of the public interest in the efficient administration of justice to remove the risk of a useless trial.

Finally, it seems to me that the majority's decision invites the prosecutor to employ the strategy utilized by the state in *State v. LaPorte* (1961), 58 Wn. (2d) 816, 365 P. (2d) 24. The dissent in that case indicates my views on that subject.

The other assignments of error are without merit, but, in view of the disposition of this case by the majority, it is pointless to discuss them.

For the reasons expressed herein, I dissent.